## DANIEL W. WILKINSON v. LIGHT, HEAT AND WATER COMPANY OF JACKSON.*

WATERWORKS. *Contract with municipality. Liability to property owner.*

 A corporation organized to supply a city and its inhabitants with water, and which contracted with the municipal authorities to supply hydrants at a designated pressure for use by the fire department, is not liable to the owner for the destruction of a house by fire, originating in an adjoining tenement, which the firemen were unable to extinguish before it reached and consumed the house, for want of such pressure on the water.

*Judge Calhoon did not take part in the decision of this case. He recused himself, having been of counsel, and J. B. Boothe Esq., was appointed and acted as special judge in his place.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

Wilkinson, the appellant, was plaintiff in the court below; the Light, Heat and Water Company, appellee, was defendant there. Wilkinson was the owner of a residence in the city of Jackson, near which were two hydrants. These hydrants the defendant had contracted with the city to keep supplied with water for the use of the fire department at a designated pressure. A fire broke out in a tenement on an adjoining lot to that on which the plaintiff's residence was located. The fire department responded at once to a prompt alarm, but, when the firemen reached the fire, it was found that the hydrants were not supplied with water under such pressure as the defendant had contracted to furnish. In fact, the pressure was merely nominal and not sufficient to throw water exceeding ten feet. As a consequence, the firemen were unable to extinguish the fire and plaintiff's residence was burned. Had the hydrants been furnished with water at the pressure contracted for, the plaintiff's house would have been saved.

The contract with the city of Jackson, so far as pertinent to the questions involved, was as follows:

" 1. This contract, made and entered into between the city of Jackson, State of Mississippi, and the Light, Heat and Water Company of Jackson, Mississippi, witnesseth: That said company, in consideration of ten dollars in hand paid by said city, the receipt whereof is hereby acknowledged, and the other payments and covenants hereinafter set forth to be made and performed by said city, hereby binds and obligates itself to said city as follows: That said company will provide and lay drown through the principal streets of said city, for eight linear miles, beneath the surface of the earth, in a good and workmanlike manner, water mains of proper size and dimensions to supply all reasonable requirements of said city or its citizens for water, within twelve months from the date of the execution of this contract, and shall have and maintain at all times (ex

·cept when suspended for necessary repairs) for the full period of twenty years from the commencement of operations by its works, a flow of pure, wholesome water, proper for drinking and lavatory purposes, through said mains, and shall at eighty points on said mains, to be designated by the mayor of said city within thirty days after notice, in writing, so to do, and if not ·designated within such time then said company shall designate such points, make proper openings and insert in such mains double fire hydrants of approved patterns, ten of which shall also have a steamer nozzle, said nozzles to fit the hose now in use in the fire department of said city.  .  .  ·  .

"3. The said works shall be complete and perfect in all its ·details. The machinery of said works shall consist of two separate and distinct pumps, with suitable boilers and other attachments capable of pumping two millions of gallons of water in twenty-four hours against a pressure equivalent to at least a pressure of one hundred and fifteen feet head at a piston speed not greater than one hundred and twenty feet per minute ·for domestic supply; also to be able to work against one hundred and twenty-five pounds per square inch pressure when necessary for fire protection; the pumps shall be so arranged that they may be worked singly or together as required, furnishing ·direct pressure. The machinery shall be increased from time to time as the growth of the city may render necessary. The mains shall be of iron pipe and shall be tested at the place of their manufacture, to withstand a hydrostatic pressure of three hundred pounds to the square inch, and shall be of ample size to carry out the provisions of this agreement and to afford the ·city where such pipes are laid first-class fire protection.  .  .  .

"5. Upon the completion of said works, they shall be tested ·as to their power and capacity. When such works shall throw water, with the aid of their pumping machinery, from any six ·separate hydrants located in the business part of said city at one and the same time, one stream from each hydrant, through ·one hundred feet of two and one-half inch hose and a one-inch

nozzle, ninety feet high, that, at and from the date of the completion of said test, if successful, the rental for fire service herein stipulated for shall begin, and said city agrees to furnish said company, upon said test, a certificate in writing to that effect.

" 6. The said company shall place a sufficient number of gate valves of approved manufacture, so as to permit shutting off water from portions of the system without interfering with the general supply. The said company may be required by the city, at any time during the proper season of the year, to make extensions of the pipe system of said works, with hydrants placed thereon not less than three hundred nor more than four hundred and fifty feet apart, by giving thirty days" notice to said company; but, as a condition of making such extensions, the said city agrees to pay rent for public fire service upon such extensions at the rate of forty-five dollars per annum for each hydrant during the term of this contract, said rental to be paid quarterly, as other rentals for public fire hydrants are payable. The said city may, however, at any time cause to be placed, under the direction of the company, additional hydrants for public fire purposes on the original eight miles of mains, upon the payment of the actual cost of said additional hydrants and the expense of laying the same, and shall be liable for no rental for such additional hydrants so located on said original mains.

" 7. The said company shall also construct and maintain in good working order an electric fire-alarm bell in the pumphouse, which may be connected by said city with the city hall and police stations and with any fire-alarm system which is or may hereafter be in use in said city, and will also erect and maintain in its pumphouse a telephone station, which shall be connected with the telephone exchange of the said city and may use as a fire alarm.

" 8. That said eighty fire hydrants, and such as may be placed on the extension or original mains as aforesaid, shall be

used only for fire purposes, except that for five minutes each day, between the hours of 11 A.M. and 3 P.M., one of the nozzles of one of said hydrants every three squares may be opened by a city officer for flushing purposes, and said hydrants may also be used for fire practice, provided in such flushing or fire practice no more than two nozzles shall be opened at the same time, and notice of the intention to open the same be given to said company, and none of said hydrants shall be so used during a fire alarm or a fire. That said company for said period of twenty years shall supply, as aforesaid, water for all of said fire hydrants at the sole cost and expense of said company. . . . .

"11. The said company shall constantly, day and night, except in case of unavoidable accident, keep all the said hydrants supplied with water for fire service, and shall keep them in good order and efficiency for such purpose.

"12. In consideration of the benefits which may be derived by the city of Jackson and its inhabitants from the construction and operation of the waterworks and of the water supply hereby secured for public use, and as an inducement for said company to enter upon the construction of said waterworks and to secure the advantages proposed to the city and her citizens from them, said city of Jackson hereby grants to said company the exclusive right and privilege to have, maintain and operate, the franchises granted by the charter of said company so far as the same pertains to waterworks only, in the city of Jackson, and the water privileges granted by this contract for the full period of twenty years from the completion and test of said works, as provided in paragraph five of this contract, subject, however, to prior termination by the city, right to purchase as in this contract provided, and for the same consideration and at the inducement said city of Jackson rents of said company for the uses herein mentioned the hydrants before described for and during the full term and period of twenty years from the completion and test aforesaid, unless

the same shall be sooner terminated as provided herein. The said city of Jackson hereby agrees to use the said hydrants for the extinguishment of fires only, except when used as herein provided for, and to make good to said company any injury which may happen to any of the said hydrants when caused by the carelessness or neglect of the city's employes; and said city hereby promises to pay to said company or its order an annual rental of sixty dollars per hydrant for each and every of said eighty public fire hydrants located on said original mains, for the full term and period of twenty years from the commencement of the operation of this contract, or for such part of said period as said waterworks shall be operated under this contract, which rental said city promises to pay in quarterly installments of one-fourth, on the first days of January, April, July, and October in each year during such term.

"13. The said city hereby covenants to levy and collect a sufficient tax annually, as provided by the amendment to the charter of said city, upon all taxable property upon the assessment rolls of said city subject by law to taxation, to meet the payments under this contract as they respectively mature during the existence of this and any other contract with said company for public fire service, and the proceeds of such levy shall be kept a separate fund, known as the water fund, and shall be irrevocably dedicated to the payment of hydrant rentals under the contract, and shall not be otherwise employed, except that any surplus in any year, after payment of all sums due under this contract for that year, may be used as said city may determine. . . . .

"15. The city of Jackson, through the board of mayor and aldermen, shall have the right, to be exercised within sixty days after the execution of this contract, to designate the streets of said city upon which said eight miles of mains shall be laid, and the distance the same are to extend on each street, provided the whole shall not exceed eight linear miles, and, in case of failure of said board to so locate, then the company

shall have the right to locate said mains after the expiration of said days on any of the streets of said city.

"16. The said city hereby authorizes, grants to and empowers said company, under the provisions of the charter of the said company, the right, franchise and privilege to build, construct, maintain and operate and own waterworks in the city of Jackson, State of Mississippi, to supply said city and its inhabitants with water as aforesaid, to lay pipes and mains for the purpose of conveying water through the streets and alleys of said city, to acquire and hold, as by its charter authorized, any and all real estate in said city, to have all easements and water rights necessary to that end and purpose, to use within the present and future limits of said city any and all streets, alleys, avenues, bridges and such public grounds as are now or may be hereafter laid out, while laying and repairing such waterworks; to receive, store, purify, conduct and distribute water through the city; to erect and maintain settling basins, filtering galleries, reservoirs, water towers, pumphouses and all necessary buildings, engines, machinery and other appliances and attachments necessary or expedient for the proper conducting and carrying on such waterworks; to cross any stream within the present or future limits of said city for the purpose of laying or extending their pipes, conduits or aqueducts as may be necessary for proper distribution of water throughout said city of Jackson as to afford the most adequate supply for domestic use and the greatest protection against fire."

The court below sustained a demurrer to Wilkinson's declaration, which demanded recovery for the loss of his house, and was based on said contract, and dismissed the suit, and the plaintiff appealed to the supreme court.

*Mc Willie & Thompson,* for appellant.

The appellee is a public corporation. An examination of its charter (laws 1888, p. 602) and the public laws of the state,

made part of it, will conclusively show that it is not a munici-
pal corporation, nor a mere aid or arm to the municipality of
Jackson, but is in every just sense a corporation for gain,
authorized and empowered to engage in a public business,
having even the right of eminent domain, and it is charged
with obligations and duties to that portion of the public within
its locality.    Early judicial decisions very much narrowed the
liabilities of railroads, express companies, and other organiza-
tions of capital which draw business from the public and made
the people dependent upon them.    A sound public policy dic-
tates that when extraordinary powers are conferred upon ag-
gregated capital, when it is given special privileges by which
to earn money from the people, and when it is permitted to
engage in the service of the public to such an extent that the
public, or any considerable portion of the public, is dependent
upon it for supplies, especially of the necessities of life, the
duties and obligations resting upon the company or corporation
representing such aggregated capital, should be correspondingly
enlarged, and it should be held liable to any one who suffers
special damage from its failure to perform duty.

The declaration is good to present the question of substantive
right, and that whether it be treated as on contract, in tort,
pure and simple, or in tort arising out of contract.    The con-
tract is important, of course, but more so perhaps in this than
in any other respect; it shows the character of defendant's
business.    It required defendant to provide at eighty points
hydrants for fire purposes, with nozzles to fit the hose of the
fire department of the city; to maintain machinery capable of
pumping two million gallons of water every twenty-four hours,
against a pressure sufficient to extinguish fires; to see that the
city and its inhabitants were afforded first-class fire protection;
to keep all the hydrants in good order and supplied with water
under a designated pressure.    For all of which the city was to
pay adequate compensation.    The contract, the location of the
hydrants, and the practical working of the scheme negative the

idea that fire protection was limited to city property. *Light, Heat, etc., Co.* v. *Jackson*, 73 Miss., 598. But it.is said there must be mutuality in contracts. We answer: Liability each to the other is the test of mutuality, and that without reference to matters of procedure. The water company can reach Wilkinson by indirection. It can make the city pay, and if necessary, can force the city to levy taxes on Wilkinson, an inhabitant, citizen, property owner and taxpayer of the city, and all other taxpayers. Therefore the requirement of mutuality is met quite as much as if the water company could reach Wilkinson by direct procedure.

Again, it is said Wilkinson was not a party to the contract. We cite in answer what is said under the heading, "Private Actions upon Public Obligations," in 1 Shearman & Redfield on Negligence, sec. 118, and a world of American authorities. 7 Am. & Eng. Enc. L. (2d ed.), 107; *Lowery* v. *Insurance Co.*, 75 Miss., 43; *Lee* v. *Newman*, 55 Miss., 365; *Sutton* v. *Carroll County*, 41 Miss., 236. The doctrine that a party for whose benefit a contract is made, known as the American as distinguished from the English doctrine, generally prevails in the United States. It does not, however, receive recognition in Connecticut (*Meech* v. *Ensign*, 49 Conn., 191, s.c. 44 Am. Rep., 225), where the earliest American waterworks case arose (*Nickerson* v. *Bridgeport Hydraulic Co.*, 46 Conn., 24, decided 1878), in which the supreme court of that state simply failed to apply to new conditions the well established doctrines of the common law. All of the authorities cited against us are based on this Connecticut case. Many of the courts following it have failed to note that by so doing they were inconsistent with their own decisions recognizing the American doctrine just mentioned. The supreme courts of Kentucky, North Carolina and Louisiana have refused to follow.

The following authorities, the North Carolina case being especially able, fully sustain appellant's right: *Paducah Lumber Co.* v. *Paducah Water Supply Co.*, 89 Ky., 340, s.c. 12

S. W. Rep., 554, s.c. (opinion on application for rehearing) 13 S. W. Rep., 249; *Duncan* v. *Owensborough Water Supply Co.* (Ky.), 12 S. W. Rep., 557; *Gorrill* v. *Greensboro Water Supply Co.*, 124 N. C., 328, s.c. 46 L. R. A., 513, s.c. 70 Am. St. Rep., 598; *Planters' Oil Mill* v. *Monroe Waterworks* (La.), 27 S. W. Rep., 684; Ostrander on Insurance (2d ed.), sec. 343, p. 726, and the entire chapter containing the section. These authorities answer every objection to appellant's cause of action, answer them on reason, while the cases cited against us rest on no better foundation than the mythical terrapin's back, the Connecticut case aforementioned.

The question now before the court is new in Mississippi. We trust that our State will on this subject preserve its place in the vanguard of enlightened jurisprudence. It is easy to join the majority; mediocrity likes to do so, but we feel confident this court will not do so unless it can effectually answer the arguments of the Kentucky and North Carolina supreme courts so as to put a quietus on the whole subject. It is greatly to the credit of both the bench and bar that legal questions are never settled until they are settled right. The judge who finds the right and quiets contention by so doing is worthy of all praise.

*Green & Green,* for appellee.

Under the contract there is no privity between the waterworks company and the taxpayers or inhabitants, and no duty is imposed by the contract or by law upon the company for which a taxpayer or inhabitant may sue. This is clear from the authorities. *Britton* v. *Green Bay Waterworks*, 81 Wis., 48, s.c. 29 Am. St. Rep., 856; *Montgomery* v. *Montgomery Waterworks*, 79 Ala., 233; *Davis* v. *Clinton Waterworks*, 54 Iowa, 59; *Becker* v. *Keokuk Waterworks*, 79 Iowa, 419; *Hewsmon* v. *Waterworks*, 119 Mo., 313, s.c. 41 Am. St. Rep., 662; *Nickerson* v. *Bridgeport Hydraulic Co.*, 46 Conn., 24, s.c. 33 Am. Rep., 1; *Foster* v. *Lookout Water Co.*, 3 Lea (Tenn.), 42;

*Fowler* v. *Athens City Waterworks*, 83 Ga., 219; *Ferris* v. *Carson Waterworks*, 16 Nev., 44; *Eaton* v. *Fairbury Waterworks* (Neb.), 21 L. R. A., 653; *Fitch* v. *Seymour Water Co.*, 139 Ind., 219; *Watt* v. *Cherryvale Water Co.* (Kan.), 15 L. R. A., 375; *House* v. *Houston Waterworks* (Tex.), 28 L. R. A., 582; *Springfield, etc., Ins. Co.* v. *Kneeville* (N. Y.), 30 L. R. A., 660, s. c. 148 N. Y., 46; *Wainwright* v. *Water Co.*, 78 Hun (N. Y.), 146; *Boston Safe Deposit Co.* v. *Salem Waterworks*, 94 Fed. Rep., 238.

Argued orally by *R. H. Thompson* and *T. A. McWillie*, for appellant, and by *Garner Green* and *M. Green*, for appellee.

*L. Brame* (who was interested as counsel in a similar case), by consent of court, also argued orally in behalf of the appellant.

BOOTHE, Special J., delivered the opinion of the court.

Appellants brought this suit to recover of the appellee, the water company, the value of his residence, furniture, etc., destroyed by fire September 30, 1899, amounting to $10,800, on the ground that the water company, by its negligence, had failed to furnish to the fire department of the city of Jackson the water pressure in the hydrants of the company necessary for the extinguishment of fires, stipulated, as alleged, to be furnished by said company under its contract with the city, made in 1888, which contract is made an exhibit and a part of plaintiff's declaration. It devolves upon the court to construe this contract, and to determine the rights of appellant, if any, growing out of it and the liability of appellee to appellant, if any has accrued, for the loss and damage complained of and set out in the declaration. A demurrer to the declaration was interposed and was sustained by the court below, and the case comes to this court, that the legal questions raised by the pleadings may be adjudicated.

It is contended by the appellant that the water company is a public corporation of this state, and not a mere aid or arm to the municipality of Jackson, exercising a governmental function; that it is a corporation for gain, engaged in a public business and charged with obligations and duties to the public within its locality; and appellant holds that the contract with the city was made for his benefit and for the benefit of the other inhabitants and citizens of the city, in consideration of the special tax he and they had to pay by reason of the contract, and also by reason of the acceptance of the valuable franchises conferred by its charter, and these considerations raised a public duty on the part of the water company to the public and are sufficient to entitle appellant to maintain his action.

It is contended that it was the duty of said water company, under its contract, to keep all its hydrants supplied with water for fire service, and that the maximum pressure on the water in the hydrants should be maintained at all times, and be applied in case of fire, and that if this duty had been performed, appellant's property would have been saved from destruction; that the water company failed and neglected to perform this duty, and the destruction of appellant's property was the direct and proximate result of such failure and negligence, and that appellee is bound, under its contract with the city of Jackson, made, as contended, for appellant's benefit, to reimburse appellant's loss.  For appellee it is contended that the city of Jackson had no authority in law to make the contract in controversy otherwise than for itself, if it had attempted to do so, which is denied, and that the contract imposed no public duty for the violation of which a taxpayer or inhabitant, when damaged thereby, may maintain an action; that there is no privity of contract between the water company and taxpayers or inhabitants, and that the fire hydrants of the company were rented by the city for use by its own fire department and in performance of its governmental function, and as a separate entity

from the taxpayers and inhabitants. We fully recognize the rule of law as to privity of contract invoked by counsel for appellee, as also the exception thereto contended for by counsel for appellant, that a person not a party to the contract may maintain an action thereon if the contract clearly and explicitly shows that it was made for his benefit. In this case, however, we are clearly of opinion that the contract before us imposes no public duty on the part of the water company to a citizen or inhabitant for the nonperformance of which an action of tort can be maintained, and that the contract does not show, in express terms or by fair intendment, that it was made for the benefit of the citizen or inhabitant in the sense that would enable him to maintain an action thereon. The demurrer was properly sustained. Let the judgment of the circuit court be affirmed.