236        SUPREME COURT OF LOUISIANA,

Oil Co. vs. Waterworks and Light Co. et al.

No. 13,829.

PLANTERS OIL MILL, INDIVIDUALLY AND FOR THE USE AND BENEFIT OF
OTHERS, VS. MONROE WATER WORKS AND LIGHT COMPANY ET AL.

SYLLABUS.

Judgment of the District Court affirmed on the facts of the case.

A PPEAL from the Sixth Judicial District, Parish of Ouachita—
Hall, J.

The present cause was before this court once before on an ap-
peal taken by the plaintiff from a judgment of the District Court
sustaining an exception of no cause of action which had been filed
by the City of Monroe and also by the Monroe Waterworks and
Light Company, the defendants therein.    The judgment appealed
from was (as will be seen by reference to the report of the case made
in 52 Ann. 1243) *affirmed* in so far as the City of Monroe was con-
cerned, but it was reversed as to the Waterworks and Light Company.
The cause, as to the latter, was reinstated and remanded for a trial
upon the merits.    The trial having taken place and having resulted in
a judgment against the plaintiff, in favor of the defendant, we are now
called on to decide an appeal taken by the plaintiff as to the correct-
ness of this judgment.    The plaintiff, on its own account and for the
use and benefit of a number of insurance companies, demands judg-
ment against the Monroe Waterworks and Light Company for damages
accruing by reason of the destruction by fire of certain property
belonging to the plaintiff in the City of Monroe.    The demand is
predicated upon an alleged breach by the Monroe Waterworks and
Light Company of the terms and conditions of a certain contract made
between it and the City of Monroe, under which contract the latter
erected, maintained and operated a system of waterworks in the City
of Monroe.    The plaintiff averred that said contract was made by the
city, not only on its own behalf but for the use and benefit of, and on
behalf of, its citizens and property owners and taxpayers of which it

TERM OF 1901-1902.                237

Oil Co. vs. Waterworks and Light Co. et al.

declared itself one. It alleged that it was entitled to the benefit of
all the provisions of that contract, and that a violation of the same,
by the Waterworks Company, gave rise to a right of action by it for
damages sustained thereby. Plaintiff averred, further, "that under a
contract directly between it and the said Waterworks Company, entered
into about the 1st of October, 1893, there had been erected long pre-
vious to the fire on the same lot where the burned property was situated,
two hydrants of the best and most approved character, one within
thirty (30) and the other within sixty feet (60) of the place where the
fire originated, and connected by pipes with the water mains to be
used by petitioner to extinguish fires and for sprinkling purposes,
which said hydrants were erected and connected with the water mains
by the said Monroe Waterworks and Light Company, at a cost of
several hundred dollars to petitioner, and that in consideration of the
payment of one hundred dollars per annum thereafter, payable quar-
terly, and which petitioner had punctually paid for the last six years,
said Monroe Waterworks and Light Company agreed to furnish and
have ready at all times, water sufficient to throw streams through
hose kept by it in proper condition, to be connected with the two
hydrants, the height provided for in said contract between said
Monroe Waterworks and Light Company and the City of Monroe."

The plaintiff, after describing the buildings which it had erected on
its property in Monroe, and the movables therein, and reciting the fact
that they had been destroyed by fire, places the amount of the loss to
itself at the sum of five thousand three hundred and sixty-nine dollars,
over and above all insurance and the amount collected by it on the
policies of insurance thereon, which sum so collected amounted in the
aggregate to the sum of forty-one thousand one hundred and fourteen
dollars and thirty cents ($41,114.30.) Plaintiff averred that at the
time of collecting said amount from the insurance companies, it exe-
cuted to them by written act of subrogation all its rights and actions.
Plaintiff alleged that the insurance companies, as subrogees, are enti-
tled to recover the said sum of $41,114.30, with legal interest from
judicial demand; that it is itself entitled to recover the amount of
$5,369.65, with legal interest from judicial demand. Plaintiff alleged
the damage aforesaid to have resulted on account of the reckless disre-
gard, flagrant and wanton violation of the contract between said

Monroe Waterworks Company and Light Company and said Planter's Oil Mill.

Referring to the fire and destruction of property, plaintiff averred that "shortly after the fire's origin was discovered, the alarm of fire was promptly turned in to the fire department of the City of Monroe, and said property would never have been destroyed had the Waterworks Company complied with its said contract and agreement with the city and with it."

Referring to the Waterworks Company, plaintiff alleged that said company, on the occasion of said fire, without cause or excuse, wholly failed to comply with its said contract with the said city and with petitioner by failing to have water in the standpipe sufficient to throw a stream through any kind, size or length of hose or nozzle, to the height of ten feet, and said company, for more than one hour and thirty minutes after the fire started, and after the fire alarm was given, and after the efficient city fire department and company, and petitioner's employees had armed and applied hose to said fire hydrants and could not get water, failed to have the pumps, engines and machinery ready to co-operate or in operation, and failed for more than one hour and thirty minutes after said time, and after the chief of the fire department had ordered the pumps put in operation, to have any competent employee or engineer at the engines or pumps to start and operate the same, and by reason of said failures, and each of them, the said property was destroyed by fire. Plaintiff's petition charged that not only on this particular occasion had the Waterworks Company violated their contract obligations by failing to furnish a sufficient supply of water for the extinguishment of fires, thereby wrongfully and negligently occasioning the loss and destruction of various properties within the City of Monroe other than that of petitioner, and the inefficient service and its insufficient supply of water for the extinguishment of fires had become notorious in said City of Monroe and had not infrequently been brought to the knowledge of the Mayor and City Council of Monroe, through reports made by the fire department and citizens of the city, as well as from frequent and striking observation on the part of city officials while attending fires, occurring both before and after that which destroyed plaintiff's property, and that the city by reason of failure and negligence on the part of the officials to compel a compliance on the part of the Waterworks

Company, and the provisions of the contract, or else to take charge of and operate the same, was guilty of gross negligence and malfeasance, which contributed to the loss and damage suffered by petitioner, and was, therefore, liable *in solido* with the Waterworks Company to the plaintiff, for its losses in the premises.

The Waterworks Company, after pleading a number of exceptions which were overruled, answered, pleading first the general issue. It specially denied any private or other contract with plaintiff at any time either verbally or in writing by itself or any one legally authorized to represent it.

On the 22nd of February, 1893, the City of Monroe adopted an ordinance designated by the number 703, which was entitled "An ordinance to provide for a system of waterworks and electric lights, both arc and incandescent, in and for the City of Monroe, Louisiana, and granting W. A. Bright and F. F. Gravely, their associates, heirs or assigns, the right to construct and operate the same; giving the right to streets, alleys and public grounds to them, their associates or assigns, and *agreeing to construct* with the said W. A. Bright and F. F. Gravely, their associates, heirs or assigns, for fire and lighting purposes for a period of thirty years from the date of the ordinance or until the works shall be purchased by the City of Monroe."

The 1st section of the ordinance ordained "That for and in consideration of the benefit to be derived by constructing and operating a system of waterworks and electric lights, and furnishing a sufficient supply of pure and wholesome water, suitable for drinking, washing and fire purposes, and arc and incandescent electric lights at such points or places as may be designated by the City Council, the rights to all the streets, lanes, avenues and public grounds as they now exist or may hereafter be extended for the purpose of laying mains, conduits, pipes and erecting hydrants, poles with electric lights, or such as may be necessary for building and operating said works hereby contemplated, is hereby given and granted W. A. Bright and F. F. Gravely, their associates, heirs or assigns, for the period of thirty years or until the City of Monroe shall purchase the said works or system."

The second section declared: "The general plan of the works shall consist of a brick pump house, appropriate in design and containing suitable pumps having a capacity of two million five hundred thou-

sand (2,500,000) gallons per twenty-four hours, and two steel boilers, each of sufficient capacity to drive the two pumps; a standpipe to be built of steel of sixty thousand tensile strain, not less than fourteen feet in diameter and one hundred feet high; the mains to cover a length of not less than four miles and to vary in size from eight to four inches in diameter; all mains to be of iron pipes and guaranteed to withstand a pressure of two hundred and fifty pounds to the square inch. The electric light system to furnish not less than fifty (50) and one thousand incandescent lights of sixteen candle power each. All of which will be more fully set forth in detailed specifications to be furnished by said W. A. Bright and F. F. Gravely, within ninety days from the passage of the ordinance, and said specifications, when accepted by the city council, shall form part of the ordinances."

The third section declares that "With a view to encountering (encouraging) the construction and operation of said works, and as a consideration, the city hereby agrees to rent for the term of this ordinance seventy double discharge hydrants at an annual rental of forty dollars each, and twenty-five arc lights, at an annual rental of ninety dollars each, payable semi-annually in cash; said fire hydrants and arc lights to be located at such points as may be designated by the City Council."

The fourth section provided for the hydrants, rental and electric lights by the levying and collection of a special tax for that purpose.

The fifth section declares that "The said W. A. Bright and F. F. Gravely and their associates, their heirs or assigns, may charge and collect, quarterly, for the water consumed by subscribers, other than the City of Monroe, the average rates now charged and collected by the cities of New Orleans, Louisiana; Pine Bluffs, Arkansas, and Jackson, Mississippi, and make such rules and regulations as they may deem proper from time to time, with the sanction of the City Council; provided, however, that in case of failure of the said W. A. Bright and F. F. Gravely, their associates or their heirs or assigns, to keep the said system of water works and electric light in good and efficient working order, except in case of unavoidable accident, the City of Monroe may require said Bright and Gravely to give satisfactory bonds for carrying out the provisions of this ordinance, and may take charge of and operate said works until said bond is given; provided, further, that in case of fire at any time when the pumps are not run-

ning, the chief of the Fire Department shall have the right to order the pumps to be put in operation and kept running—that is, with the pressure direct on the mains—until the fire is extinguished.

The sixth section declares: "That the water works, when completed, shall be subject to a test, which shall consist of throwing two streams sixty (60) feet high through a seven-eighths (7-8) nozzle, at the same time, and upon this test being made, the city shall be obligated and bound for the hydrant rental as provided in Section 3 of the ordinance.

The seventh section authorizes the city to rent additional hydrants for the unexpired term of the ordinance, at the rate of forty dollars per annum, and makes it the duty of the company to make extensions whenever required by a resolution of the City Council under certain conditions.

The eighth section confers upon the city, under certain conditions and terms, the right to purchase the works.

The ninth section declares that "The ordinance shall be a contract *between W. A. Bright and F. F. Gravely,* their associates, heirs or assigns, *and the City of Monroe;* provided, the said W. A. Bright and F. F. Gravely, their associates, heirs or assigns, shall commence work within three months from the time the three and a half mill tax has been voted and promulgated, and have the works completed within nine months after said work shall have been so commenced."

The tenth section requires Bright and Gravely to furnish, within twenty days after the three and one-half mill tax has been voted, a bond in favor of the city in the sum of twenty-five hundred dollars to secure the faithful performance by them of the stipulations of the ordinance.

The record contains a copy of the proceedings of a meeting of the council of the City of Monroe held on the 20th of May, 1892, from which it appears that Bright and Gravely had executed and tendered to the city a bond as required by the tenth section of Ordinance 703, accompanying the same with the plans and specifications of the works which they proposed to construct, and that the meeting in question was a "called meeting," the object of which was to examine the bonds and the said plans and specifications of the works.

At this meeting the council and mayor accepted the bond and said plans and specifications, and adopted *Ordinance No. XI,* which recited that certain conditions and stipulations contained in said Ordinance

242    SUPREME COURT OF LOUISIANA,

Oil Co. vs. Waterworks and Light Co. et al.

No. 703 had been performed and complied with; that the special tax required to be voted in order to make the contract referred to in that ordinance become operative had been duly authorized at an election by the people, and that Bright and Gravely had executed their bond as required by said Ordinance No. 703; it was thereon ordained and declared that the said Ordinance No. 703 was a contract between the mayor and City Council of the City of Monroe and the said W. A. Bright and F. F. Gravely, and binding upon all parties thereto.

Neither in the privilege granted to Bright and Gravely nor in the contract between them and the City of Monroe is there any agreement or stipulation *by which the grantees agreed* to hold themselves liable for damages to citizens from loss to their property, from violation of their obligations, under the permit and the contracts with the city.

Such a stipulation was placed in several of the permits for water-work plants and franchises and in the contracts made by different cities under such franchises, which have been submitted to and undergone judicial investigation in other States.

Such was the situation in the case of Gorrell vs. Greensboro Water Supply Company, decided by the Supreme Court of North Carolina and reported in 46 L. R. A., 513.

*E. Tyler Lamkin* and *Andrew Augustus Gunby,* for Plaintiff and Appellant.

*Hudson, Potts & Bernstein,* for Defendant, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J. We are of the opinion that the judgment of the District Court was correct upon the facts of the case. Plaintiff complains that the water service of the defendant, at the time of the fire upon its property, was entirely defective, and that to this was due the loss of his property, but we are of the opinion, under the evidence, that if the fire department failed to accomplish, in the extinguishment of the fire, all that the situation itself demanded, it was to a very large extent, if not entirely, attributable to the sprinkler system which the plaintiff had itself established on its premises. That system is shown by the evidence to be very effective in the extinguishment of fire, in its earlier stages, if the water from the sprinkler can reach it. The sprinklers

are closed by some metalic substance which melts in the presence of a low degree of heat, and by melting permits the water from the pipes with which they are connected to be precipitated at once below.

The expert witnesses who testified in the case declare that under certain conditions and at certain stages of fires, when the supply of water to the sprinklers is obtained by pipes which connect with the public mains, the system, unless cut off at the proper time, would interfere greatly with efficient use by the city fire department of the instrumentalities furnished by the city for the extinguishment of fires. The witnesses testifying who seem most familiar with the scientific rules governing the subject-matter with which they are dealing attribute any failure of the fire department of Monroe to have done more effective work than it might have done on the occasion of the fire on the plaintiff's property, not to any fault on the part of the defendant company, but to the existence of the sprinkler system upon the plaintiff's property, and to the fact of there being a continuous simultaneous discharge of water during the fire from all of its openings through the connection of the system with the public mains in close proximity to the public hydrants from which the defendant was operating. If this be true, and we·are not prepared to say that it is not, the plaintiff is itself to blame for the situation.

Being of the opinion that the judgment appealed from is correct, it is hereby affirmed.

Rehearing refused.