## LUTZ v. TAHLEQUAH WATER CO.

No. 897.   Opinion Filed June 27, 1911.

**WATERS—Municipal Supply—Loss by Fire—Liability of Water Company.**  A private citizen, although a taxpayer of a municipality, cannot maintain an action against a waterworks company to recover damages for losses by fire sustained by him in consequence of the failure of the company to perform its contract with the municipality to furnish a supply of water for the extinguishment of fires, as there is a want of privity between the citizen and the company which prevents him from suing either for breach of the contract or for the breach of duty growing out of the contract.

(Syllabus by the Court.)

*Error from District Court, Cherokee County; John H. Pitchford, Judge.*

Action by P M. Lutz against the Tahlequah Water Company.   Judgment for defendant, and plaintiff brings error.   Affirmed.

*Bruce L. Keenan,* for plaintiff in error.

*W. W. Hastings,* for defendant in error.

DUNN, J.   This case presents error from the district court of Cherokee county.   It is an action brought by the plaintiff in error against the Tahlequah Water Company and the town of Tahlequah, for the purpose of recovering damages.   The facts out of which the action arose are substantially as follows:   The Crystal Springs Water Company had secured a franchise to install a system of waterworks for the town of Tahlequah and as a part of its franchise it was required to supply the town with water to extinguish fires, in consideration of which it was to receive hydrant rental of $50 for each hydrant established, to be paid for from the revenues of the town derived from taxes on property located therein.   During the life of the franchise it was provided that the said company should have the exclusive privilege of supplying water to the citizens of the town for domestic and manufacturing purposes.   The portion of the contract which the company made with the town providing for the

furnishing of water for fire extinguishing purposes is found in the franchise ordinance and is as follows: ·

"Said waterworks shall be constructed upon the plans and specifications furnished by C. A. Rees, which are to be made a part of this contract, providing for the use of the town a reservoir or standpipe for domestic and manufacturing supplies, and direct hydrant pressure for extinguishing fires, to be furnished by stand-pipe or tower reservoir, or by direct pressure of pumps from pump at station, and to maintain four streams from any four fire plugs on Muskogee avenue to a height of sixty feet through fifty feet of two and ·one-half inch hose and one inch discharge."

It is alleged in plaintiff's petition that the Tahlequah Water Company, as the successor of the Crystal Water Company, had failed to furnish the supply of water it had contracted for, and by reason of such failure on its part the plaintiff had, as a proximate result thereof, suffered damage by a fire in the sum of $694. To the petition a demurrer was filed in which it was averred that the same did not state facts sufficient to constitute a cause of action. The plaintiff dismissed his cause of action against the town of Tahlequah without prejudice, whereupon the court sustained the demurrer and dismissed plaintiff's action, and the case has been duly lodged in this court for review. The only error alleged is that the court erred in sustaining this de-murrer.

Counsel v⹄ry frankly, at the outset of his argument, says:

"I am going to admit what is certainly the fact, that the weight of authority is against the contention of the plaintiff in error; but at the same time the more the reason for this authority is examined the more convincing it seems that the reason for the law is against the authority. This case is not to be argued on the authority, but against the authority."

Thereafter counsel calls·attention to a number of cases hold-ing adversely to his contention, and then to the favorable case of *Paducah Lumber Co. v. Paducah Water Supply Co.,* 89 Ky. 340, 25 Am. St. Rep. 536, and certain sections of the Civil Procedure Act of the state of Oklahoma, and concludes by saying:

"Law is more than the mere uniformity of rules and prece-dents; it is the very essence of human reason and the application ·

of that significant term, common sense. The law is what it ought to be—at least the courts should make it what it ought to be. The precedents in the principal cases on the subject discussed in this brief are not what they ought to be, and it is submitted to the State Supreme Court of Oklahoma, unhampered as yet by these precedents, to make reason and the precedent in this state coincide."

Counsel's argument against the force and effect of established precedent strikes at the very root of the common law, and if his view on the subject had been followed since the time when the mind of man ran not to the contrary instead of there being a system of rules and procedure for the reasonably certain government of the affairs of man, there would be a chaotic mass of inharmonious, contradictory rules and law where every decision involved in a legal controversy would depend upon whether the court in which it fell entertained one view of the policy of the law or another. If there is a seeming argument in favor of allowing the enforcement of an independent rule as the right appears to the particular judge considering the case before him, rather than to require a following of the fixed declaration thereof, although it may have stood unvexed by dissent for centuries, or many years, the administration of such a doctrine would render the law as changeable as the opinions of the individuals who happened to fill temporarily the places of judges on the courts. Absolute certainty in the law is of infinitely greater importance to everyone than absolute right, because the question of absolute right affects but the few who get into court, while absolute certainty affects everyone and permeates every avenue of life. When a rule is once permanently established, all may then act under it and assume their obligations in accord with and in reference to its requirements; but if the rule shall be constantly shifting, then none may deal and know that his rights are secure, or even know what they are. A rule which is absolute and certain and wrong, and out of which injustice may and does evolve, presents a shining mark for correction at the hands of the Legislature; but a rule which is shifting is more likely to present a superficial appearance of being right, and thus correction be delayed or denied. True it is, as suggested by counsel, there are

nearly fifty appellate courts in this nation, each and all industriously grinding out their grist of precedent. But the hopeful observation is to be indulged in this connection that, of late years, the universal dissemination among these courts of the conclusions reached by all has had a very marked tendency toward bringing uniformity out of judicial precedents where before there had been conflict. Thus, by the very force of the weight of authority and precedent, a uniform code and system of jurisprudence is being gradually evolved. As a political body or nation we have numerous jurisdictions, yet the lines separating them are merely arbitrary and artificial; as a people we have a common destiny; we are one, with one life, one language, one great system of commercialism, and manifestly, for the peace, tranquility, economy, and general welfare of all, but one set of laws or rules of action should obtain. There is no reason why the crossing of a state line should change the legal relations, obligations, or duties which one citizen owes to another, and that it does so is distracting and wasteful and leads to loss, dissent, uncertainty, litigation, and discord. The challenge which counsel makes has occasioned on our part an investigation of the force and effect of precedent, and the real duty of courts in reference thereto. In an able argument delivered in June, 1893, by Hon. Lyman Trumbull, reported in Vol. 27, American Law Review, p. 321, entitled "Precedent v. Justice," it was contended that the courts were in error in following precedent rather than their own judgments of what was right in the case under consideration; in it the learned jurist said:

"Precedents are only useful as aids in arriving at what is right, and should not be followed because they have been set in former times, unless founded upon right and justice. In the ordinary practice of law, the first thing a lawyer looks for, and the judge wants to know, is the authorities—that is, how some court at some former time, somewhere, decided a somewhat similar case, and when that is found, if favorable, the lawyer regards his case as won, and the court is very apt to agree with him."

While this language is couched in that of adverse criticism, it presents in our judgment the strongest reason why courts should adhere to precedents. If a prospective litigant is able to present his facts to his counsel, and his counsel is then able from

authorities to advise him with certainty, is not this better, and is not reason and justice more nearly attained and conserved in the multitude of transactions, than if his counsel were able merely to speculate upon what the probable outcome would be? There will always be, under any and every system of law, occasional instances where, by reason of its necessary universality, injustice will occur; but if the law shall be made to fit these occasional and unusual cases, injustice will then be the rule and will follow in the great mass of cases which are, the usual ones. We feel that it must be true, in the opinions of the courts as elsewhere, that in the multitude of counsel there is wisdom, and in the courts as elsewhere, the judgment of the majority must control where the court is made up of several members. As this rule must obtain within courts, and as no better method of ascertaining truth has ever been devised than that of accepting the judgment of the greater number, we cannot conclude that we are far wrong when the observance of such rule is adopted as controlling between conflicting decisions.

In the work entitled "Ram's Legal Judgment," which deals with and covers the entire field of the subject, the question we are here considering is discussed by that author with numerous citations and quotations from almost numberless cases. Speaking to the point of the supreme desirability that the law shall be certain, the author, at pages 24 and 25, says:

"A chief object at which, in constructing their judgments, the courts attentively look is certainty in the law; and to cause their judgments to have this effect is their constant and most anxious desire. The language of the court is, 'It is better the law should be certain, than that every judge should speculate upon improvements in it.' 'The decisions of our predecessors, the judges of former times, ought to be followed and adopted, unless we can see very clearly that they are erroneous, for otherwise there will be no certainty in the administration of the law.' 'It is of great importance in almost every case, but particularly in mercantile law, that a rule once laid down and firmly established, and continued to be acted upon for many years, should not be changed, unless it appears clearly to have been founded upon wrong principles.' * * * 'Where things are settled, and rendered certain, it will not be so material how, as long as they are

so, and that all people know how to act.' 'No matter what the law is, so it be certain.' 'Certainty is the mother of repose, and therefore the law aims at certainty.' 'The principle of adopting precedent as the guide of judicial decisions, gives stability and vigor to the administration of justice. Speculative wisdom can never devise a code capable of providing for the infinite variety of cases arising out of the transactions of even the most simple state of society. A system of jurisprudence founded on precedent admits the engrafting of other precedents as they arise, and this will form the nearest approach to a perfect code; because, although no two cases are ever *exactly* similar, still no one new case ever happens which has not had a forerunner in some earlier case, so nearly analogous to it as to afford a rational rule to the tribunal.' 'In our system of judicature, we are bound by precedent and the authority of previous cases, unless they are plainly and manifestly founded upon erroneous principles, and that for the wise purpose of securing a reasonable degree of certainty in our judicial proceedings.' "

And in reference to the extent to which courts will sometimes go in order that a point settled may remain so, even though it may not perhaps meet with the entire acquiescence of the court then dealing with the question, the author, citing numerous authorities, at pages 228 and 229, says:

" 'The point which has been often adjudged ought to rest in peace.' When a doctrine is once fixed, as if it be so fixed by a decision, and subsequent practice grounded on it; or by several decisions, and the course of practice established accordingly; or by 'successive determinations,' or by a strong and uniform train of decisions; or by 'a long series of authority,' or by authorities, which, on one side, do in weight, number, and uniformity, very much preponderate over authorities standing on the other side of the question, the law is, and it is constantly with much force expressed—that, although if the matter were entire, *res integra,* a new case or point, it might admit of difficulty, or the judge would have his doubts; or although the doctrine is not 'founded in good sense,' or is not 'bottomed in reason,' or the court cannot understand the reason on which it is grounded, or the judge 'cannot approve the reasons that others have given, or may not be able to assign a satisfactory one himself,' or 'although the doctrine is not founded upon truly rational grounds, and principles, but upon legal niceties and subtility'; or 'notwithstanding one would wish that no such rule had ever been established, and

lament that such nice subtilities should have been admitted as the ground of it'; or although the rule when first raised, 'went *satis ex arbitrio'*; or although the series of cases, on which the rule or doctrine is based, were decided 'certainly at not a very remote period'; or although the doctrine, applied to a particular case, makes it a very hard or unfortunate one; or whatever may be the court's opinon—yet, the doctrine being settled, or the point closed, it is to be adhered to.' "

Certainly where a decision has been rendered in conflict with a statute or without the court having had its attention called to or given consideration to controlling authorities, the same would not become binding and fixed, nor should it; and also manifestly where there are but few authorities on a proposition, or where those which are, are about or even approximately equally divided, each new jurisdiction in which the question involved arises, is virtually at large and must determine for itself which line is in accord with the established law on the subject, and leave time to work uniformity between adjudications or the Legislature to provide correction. No; let courts abide the law when settled, and keep discord from their judgments, to the end that a kindly land may slumber, "lapped in universal law."

From the foregoing it will be seen that we are unable to concur with counsel in his strictures upon following the weight of authority in this case. Nor in so doing do we feel that an injustice is being done the litigants, but rather that the contract made and the obligations created by the law which existed before and at the time of the occurrence out of which this controversy has arisen, are being observed and carried out. When the water company came to establish itself at Tahlequah, and when the parties who invested their funds therein and took upon themselves the burdens involved, it must be assumed, from the character of the project and the large investment necessarily involved, that they were aware that the great weight of judicial opinion in the United States was that, in the event of a failure on the part of the company to supply water on the occasion of the destruction of some taxpayer's property, it would not be liable to him for the damages.

Furthermore, it must have been assumed by them as reasonable that, should a controversy of this character arise, the courts of this state would, as other courts very generally do, follow this preponderating weight of authority, and that a liability would not be declared against them. Water rates and charges are made and based upon the expense of maintaining the business, coupled with a regard for a return upon the investment. Where the hazards are increased, water rates and taxation to cover the same would necessarily likewise be increased. Without this liability on a company it could, should, and probably would— and doubtless did in this city—render this service for a less rate than if it carried it. Herein this taxpayer was relieved of an increased burden by reason of this assumed limitation of responsibility on the part of the company. If we should now ignore the weight of authority as counsel urge, we would ignore all of these elements which go in to make up the actual relationship between the parties.

So that, as we view the subject, naught could come to the company or the litigant but injustice from a failure or refusal on our part to follow what is. termed by the later cases wherein this subject has been considered, "the overwhelming weight of authority."

With this conclusion reached, it would probably seem to be a work of supererogation to cite authorities, for an acknowledgment of the force of the weight of authority, it is conceded, determines the case adversely to plaintiff in error. We will, however, refer to one of the late cases, that of *Lovejoy v. Bessemer Waterworks Co.*, 146 Ala. 374, 9 Am. & Eng. Ann. Cases, 1068, decided May 11, 1906, wherein the lower court sustained a demurrer to a petition of plaintiff in which it was set up that "the defendant operated the waterworks system for supplying water to the fire plugs of the city of Bessemer for extinguishing fires, under a contract with the city of Bessemer by the terms of which the defendant bound itself to keep its system of waterworks in effective working order, and to supply the city, its citizens, and the manufacturing establishments of said city with

water for sanitary, fire, domestic, and manufacturing purposes, and to keep a full and sufficient quantity of water at all times available for all of the purposes aforesaid, and by the terms of this contract defendant had the exclusive right to furnish water within the limits of said city; that on said date plaintiff owned and resided in a certain house situated in said city of Bessemer, and had a large amount of personal property in said house; that on said day said house caught fire, and said fire department attended the scene of said fire, ready, able, and willing to extinguish said fire, provided there had been a proper supply of water to be promptly had from said fire plug, and it was the duty of defendant, growing out of the aforesaid contract with the city of Bessemer, to exercise due care to furnish a full and available supply of water for said purpose; but, notwithstanding said duty, defendant so negligently conducted itself in that regard that there was not a full and available supply of water to be had from said fire plug, and as a proximate consequence thereof, plaintiff's house was destroyed by fire." In affirming the judgment of the lower court, Chief Justice Weakley said:

"The overwhelming weight of authority is against the right of the plaintiff to maintain this action. The reason why he may not do so is that there is a want of privity between him and the defendant which disables him either from suing for a breach of the contract or for the breach of duty growing out of the contract. It is impossible at this late day to say anything new upon this subject, and it would be affectation to attempt any elaborate discussion of the question involved. The reasoning which leads to the conclusion may be found in many, if not all, of the following cases, which have been examined and which hold against the right of a plaintiff, under similar conditions, to recover damages for losses by fire occasioned by the failure of a waterworks company to furnish a supply of water as it had stipulated to do in its contract with the municipality: *Nickerson v. Bridgeport Hydraulic Co.*, 46 Conn. 24, 33 Am. Rep. 1; *Foster v. Lookout Water Co.*, 3 Lea (Tenn.) 42; *Davis v. Clinton Waterworks Co.*, 54 Iowa, 39, 6 N. W. Rep. 126, 37 Am. Rep. 185; *Fowler v. Athens City Waterworks Co.*, 83 Ga. 219, 9 S. E. Rep. 673, 20 Am. St. Rep. 313; *Ferris v. Carson Water Co.*, 16 Nev. 44, 40 Am. Rep. 488; *Becker v. Keokuk Waterworks*, 79 Iowa, 419, 44 N. W. Rep. 694, 18 Am. St. Rep. 377; *Howsmon*

*v. Trenton Water Co.,* 119 Mo. 304, S. W. Rep. 784, 41 Am. St. Rep. 654, 23 L. R. A. 146; *Fitch v. Seymour Water Co.,* 139 Ind. 214, 37 N. E. Rep. 982, 47 Am. St. Rep. 258; *Britton v. Green Bay, etc., Waterworks Co.,* 51 N. W. Rep. 84, 81 Wis. 48, 29 Am. St. Rep. 856; *House v. Houston Waterworks Co.,* Tex. Civ. App. 1893, 22 S. W. Rep. 277, affirmed by Supreme Court of Texas in 88 Tex. 233, 31 S. W. Rep. 179, 28 L. R. A. 532; *Beck v. Kittaning Water Co.* (Pa. 1887) 11 Atl. Rep. 300; *Wilkinson v. Light, etc., Co.,* 78 Miss. 389, 28 So. Rep. 877; *Mott v. Cherryvale Water, etc., Co.,* 48 Kan. 12, 28 Pac. Rep. 989, 15 L. R. A. 375, 30 Am. St. Rep. 267; *Bush v. Artesian Hot, etc., Water Co.,* 4 Idaho, 618, 43 Pac. Rep. 69, 95 Am. St. Rep. 161; *Eaton v. Fairburg Waterworks Co.,* 37 Neb. 546, 56 N. W. Rep. 201, 21 L. R. A. 653, 40 Am. St. Rep. 510; *Allen, etc., Mfg. Co. v. Shreveport Waterworks Co.,* 113 La. 1091, 2 Ann. Cas. 471, 37 So. Rep. 980, 68 L. R. A. 650; *Boston Safe Deposit, etc., Co. v. Salem Water Co.,* 94 Fed. Rep. 238; *Metropolitan Trust Co. v. Topeka Water Co.,* 132 Fed. Rep. 702."

In addition to the authorities therein set forth, we may note the following: *Oil Co. v. Waterworks, etc., Co. et al.,* 108 La. 236; *Anderson et al. v. Fitzgerald,* 21 Fed. 294; *City Council of Montgomery v. Montgomery Waterworks,* 79 Ala. 233; *Atkinson v. Newcastle, etc., Waterworks Co.,* 2 Law Reports (Exchequer Division), 441.

In following in this case, as we do, that which is the settled judgment of very nearly all courts of last resort, English, federal, and state, we do so with the abiding·conviction that it is the law, and is correctly declared; yet, if it did not meet with our personal approval, the situation requires that it must receive our judicial approval, for, as was said by Mr. Bishop in his First Book of the Law, sec. 91, quoted by Ram in his work on Legal Judgments, at page 31:

"It is neither the province nor the right of a judge to decide any cause on his individual private views. The judicial mind, in which the law is said to repose, is distinct from his personal conscience."

The judgment of the trial court is therefore affirmed, and the cause is dismissed at the cost of the plaintiff in error.

TURNER, C. J., and KANE and HAYES, JJ., concur; WILLIAMS, J., absent and not participating.