George E. ROSE and Fern Rose, Husband and Wife, Appellants,

v.

SAPULPA RURAL WATER COMPANY, an Oklahoma Corporation, Appellee.

No. 53661.

Supreme Court of Oklahoma.

July 14, 1981.

John P. McCormick, Jr., Pray, Walker, Jackman, Williamson & Marlar, Tulsa, for appellants.

Rodney A. Edwards, Jones, Givens, Gotcher, Doyle & Bogan, Inc., Tulsa, for appellee.

LAVENDER, Justice:

The issue presented here is whether the depositions, admissions, answers to interrogatories, and affidavits on file show that there is no substantial controversy as to any material fact in this case and, if such is the case, whether defendant is thereby entitled to judgment as a matter of law.[1]

On appellate review, all inferences and conclusions to be drawn from the underlying facts contained in the record should be viewed in the light most favorable to the party opposing the motion for summary judgment.[2]

The uncontroverted facts in the record before us, insofar as they are pertinent, are as follows:

Defendant Sapulpa Rural Water Company is a non-profit corporation that was formed for the purpose of supplying potable water to rural areas surrounding the City of Sapulpa, Oklahoma, having been originally financed through Farmers Home Administration. "Memberships" within defendant corporation are in two categories. The first are water users who purchased "benefit units" at an initial cost of $150, the equivalent of a water tap fee. Owners of "benefit units" are the only members with voting rights in the corporation. In the second category are user-customers who by paying a prescribed tap fee are entitled to hook onto defendant's water main and to purchase water at regular customer rates. Either a benefit owner or a tap user may at his option have a fire hydrant installed at defendant's main line near the customer's property by paying to defendant the sum of $185 for six to eight inch lines, or the sum of $168 for four inch and smaller lines. Such fire hydrant is and remains the property of defendant and defendant has exclusive control over the cut-off valve between the hydrant and the defendant's water main.

The former owners of plaintiff's land were owners of a benefit unit and had paid defendant $168, thereby obtaining a fire hydrant for a four to six inch water line in front of their premises. While the larger hydrant on a six inch or larger line might be capable of direct fire fighting from a hose hook-up to the hydrant, the smaller hydrant was capable of and intended only for the purpose of filling a water truck.

Plaintiffs purchased the land from the former owners and by paying the water tap fee became user-customers of defendant. Plaintiffs did not become owners of a benefit unit in defendant and were not advised of the limited capabilities of the smaller hydrant procured by their predecessors in title.

No regular inspections or testing of fire hydrants were made by the defendant to determine whether fire hydrants were operable. If a customer user complained of low water pressure or reported a break in a water line, or if the representative of defendant who was engaged by defendant to maintain the system became aware of a defect in the system through his irregular travels near the water system, repairs were made.

On June 4, 1977, a fire occurred at plaintiffs' premises. When fire fighting units arrived, it was discovered that the fire hydrant in question was inoperative, hampering and delaying efforts to extinguish the fire, resulting in the loss of plaintiffs' buildings and contents.

---

1. Rule 13, Rules for the District Courts of Oklahoma.

2. *Jones v. General Motors Acceptance Corporation*, Okl., 565 P.2d 9 (1977).

Plaintiffs contend that defendant had a duty to inspect and to maintain the hydrant, and, had it performed that duty, the fire hydrant would have functioned properly, thereby minimizing plaintiffs' loss.

Defendant contends that it did not carelessly or negligently allow the hydrant to become inoperative, and further contends that it had no duty to inspect or maintain it.

We first consider the issue of whether the defendant had a duty to inspect and maintain the fire hydrant, because if no such duty existed, failure to perform it is not actionable.

In the early Oklahoma case of *Lutz v. Talequah Water Co.*, 29 Okl. 171, 118 P. 128 (1911) this Court had before it a case in which the facts and the issue are quite similar to those here. There the Talequah Water Company owned a franchise to install a water system for the town of Talequah, and as a part of its franchise it was required to supply the town with water to extinguish fires. The franchise ordinance required the water company to provide for the use of the town a reservoir or standpipe for domestic and manufacturing supplies, "and direct hydrant pressure for extinguishing fires, * * *." Suit was brought by a private citizen, alleging that the water company had failed to furnish the supply of water it had contracted for, and by reason of such failure and as a proximate result thereof, plaintiff sustained damage by reason of a fire loss. In *Lutz*, the Court observed that there was no contract existing between the private citizen plaintiff and the water company, and held that there being a lack of privity, the plaintiff was precluded from suing either for breach of contract, or for the breach of duty growing out of the contract.[3] Were we living in the days of Lutz, it would be a simple matter to apply the doctrine of stare decisis and hold the absence of privity to be determinative. However, the metamorphose of the law as to whether privity is essential to recovery requires us to take a more expanded view of whether a duty was imposed on the defendant here, and whether its breach gives rise to a cause of action where privity does not exist.

Since the plaintiff in the case before us had no contract with the defendant expressly requiring the defendant to install, inspect or maintain a fire hydrant at or near the plaintiffs' premises, lack of privity precludes recovery on express contract on the part of the plaintiff. *Lutz v. Talequah Water Co., supra.*

While we note that under the terms of the Rural Water, Sewer, Gas and Solid Waste Management Districts Act (Laws 1972, c. 254, § 1, as amended by Laws 1975, c. 170, § 1 et seq.) § 1324.10 A 16 there is enumerated among the powers invested in corporations such as the defendant the power to enter into contracts for fire protection

3. In a decision contemporary with *Lutz, supra*, California in *Niehaus Bros. Co. v. Contra Costa Water Co.*, 159 Cal. 305, 113 P. 375 (1911) held that a contract between a private individual and a water company whereby plaintiff was permitted to erect a fire plug to be supplied by water from the company, the plaintiff agreeing not to use any water therefrom except for the extinguishment of fires was not actionable because there was nothing in such contract which expressly obligated the water company to furnish water *for fighting fires*. Neither was a duty to have sufficient water available to be implied from the contract to permit the fire hydrant to be connected with the water company's system. The court further rejected the plaintiff's claim that the water company, being a public service corporation, was in a business affected with a public interest, thereby imposing a duty to furnish water to the inhabitants of the municipality. The court said: "the primary business of a water company is to furnish water as a commodity, and not to extinguish fires, and further recognizing that under the law of this state the defendant is a quasi public corporation engaged in the exercise of a public use in discharging a public duty which would otherwise devolve upon the municipality itself and furnishing water at rates fixed exclusively by the municipality, it would appear plain that it was never contemplated that from the simple relation of distributor and consumer the former undertook to assume liability for failure to furnish water to extinguish fires." *Niehaus* was cited with approval and followed in *Luis v. Orcutt Town Water Company*, 204 Cal.App.2d 433, 22 Cal.Rptr. 389 (1962). See also 94 C.J.S. Waters § 310b and 78 Am.Jur.2d Waterworks and Water Companies, Sections 50 through 54.

and "to construct, enlarge, extend or otherwise improve community facilities providing essential services to rural residents, including, but not limited to, fire protection, * * *," the power to contract for fire protection or to construct or improve community facilities essential to rural residents for fire protection does not impose a duty upon the defendant to do so. The only contract existent between plaintiff and defendant was one where defendant agreed to sell water to plaintiff at defendant's water tap upon defendant's trunk line, in exchange for which the plaintiff agreed to pay the regular established user customer rate.

Nor can a right to recover for breach of contract under the facts of this case arise by implication.[4]

■■■ Having determined that the plaintiffs have no right of recovery for breach of contract, we turn to the question of whether under the facts of this case the plaintiffs may recover in tort.

The threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to have been harmed.[5] Specifically, the issue here is whether the fact that the defendant having for whatever reason undertaken to install a water system and to furnish water to customer users such as the plaintiffs, and having for whatever reason installed a fire hydrant at or near the plaintiffs' premises thereby as a matter of law had a duty imposed upon it to inspect and maintain the fire hydrant in operable condition.

In urging the existence of such a duty, plaintiffs cite the cases of *Lisle v. Anderson*, 61 Okl. 68, 159 P. 278 (1916) and *Foster v. Harding*, Okl., 426 P.2d 355 (1967) wherein we said: "Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person . . . will be in danger of receiving an injury, a duty to exercise ordinary care to prevent

such injury arises . . . ." Plaintiffs then cite *Doyle v. South Pittsburg Water Company*, 414 Pa. 199, 199 A.2d 875 (1964) as supporting their position that it was reasonably foreseeable on the part of the defendant that an inoperative fire hydrant would, as a natural and probable consequence of its malfunction, cause damage to one whose property is on fire, and that therefore, under the facts of this case, defendant had a duty to inspect and maintain the hydrant.

In *Doyle, supra*, the plaintiffs were not relying upon the defendant water company's breach of duty to supply water but on its breach of duty to use reasonable care in the operation and maintenance of a water system which the defendant had in fact set up in the vicinity of the plaintiffs' property. Doyle reasons that the defendant having undertaken to set up hydrants in the vicinity of plaintiffs' property, reasonable care in the maintenance and repair of the planted hydrants became imperative, and the failure on the part of defendant to inspect, maintain, and repair is the duty breached, which is imposed by law and which is actionable. That court applied the rule that where a party to a contract assumes a duty to the other party to a contract, and it is foreseeable that a breach of that duty will cause injury to some third person not a party to the contract, the contracting party owes a duty to all those falling within the foreseeable orbit of risk of harm, relying upon the famous case of *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, where the opinion was written by Justice Cardozo, and in which Cardozo said:

"If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irre-

---

4. *Atlas Finishing Co. v. Hackensack Water Co.*, 10 N.J.Misc. 1197, 163 A. 20, 47 C.J. p. 1280 note 8.

5. *Haas v. Firestone Tire & Rubber Co.*, Okl., 563 P.2d 620 (1976).

spective of a contract, the manufacturer of this thing of danger is under a duty to make it carefully."

While we subscribe to what has been said thus far in *MacPherson, supra,* as quoted in *Doyle,* we suggest that beyond that point, the learned writer of the majority opinion in *Doyle* became awash in the overflow of his own fire hydrant when he says it follows that:

"To erect fire hydrants close to dwellings is to assure the inhabitants of those homes that potential fire engines stand guard to fight an invading conflagration. To erect fire hydrants and then not inspect them with some reasonable regularity is like setting sentinels and then offering them no relief or food so that they fall over from exhaustion and thereby become useless as watchful guardians."

We must reject the attempted analogy that erecting fire hydrants near a plaintiff's home thereby creates a dangerous condition, the natural and probable consequences thereof being that if a fire hydrant does not operate at the time of a fire its malfunction is the result of the breach of a duty thereby imposed to inspect the hydrant and to maintain it. It could with equal logic be said that parking a fire engine in front of a person's house might give the inhabitants thereof assurance that it stands guard to fight an invading conflagration, but placing the engine near the home does not thereby impose a duty on the driver of the fire engine to inspect and maintain it lest fire break out in the neighborhood. We prefer to follow the great majority of decisions and hold that the defendant having no duty to inspect or maintain the fire hydrant, the plaintiffs have no right of recovery in cases such as the one now before us.[6]

Under the facts in the case before us, the mere presence of a fire hydrant near the plaintiffs' property did not create a condition or a set of circumstances which would as a matter of law require the defendant to foresee that a fire loss might occur if some latent defect in the hydrant rendered it inoperable. Even if the hydrant were operable, its functional capacity would have been limited to filling a fire truck with water. It would not have had the capability of a direct hydrant-to-hose fire fighting use. If we were to apply plaintiffs' reasoning, the mere presence of a fire hydrant would have required the defendant to furnish a hydrant capable of hose-to-hydrant use, even though the limited size of the line would have made such use impossible. To so hold would be to extend the concept of duty beyond reason and good sense. A patent, visible defect in a fire hydrant which defect has gone unrepaired for a period of time is not herein involved, and what duty might thereby be imposed by law is not before the Court in this case.

Viewing all of the facts now in the record before this Court in the light most favorable to the plaintiffs, the plaintiffs have no right of recovery against the defendant either under the law of contract or tort. The judgment of the trial court is therefore affirmed.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and HARGRAVE and OPALA, JJ., concur.

BOX, Special Justice and HODGES, SIMMS and DOOLIN, JJ., dissent.

WILLIAMS, J., certified his disqualification and the Honorable DWAIN D. BOX was appointed in his stead.

---

**6.** See *Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896 (1928) and the many cases set forth in 62 A.L.R. 1205 et seq., 78 Am.Jur.2d Waterworks and Water Companies, § 50 et seq. and in 94 C.J.S. Water, § 310, supra.