Lewis G. KEEL and Hester H. Keel, Appellants,

v.

TITAN CONSTRUCTION CORPORATION d/b/a Fashion Guild Homes, an Oklahoma corporation, and Larry Anderson, an individual, Appellees.

No. 53980.

Supreme Court of Oklahoma.

Dec. 1, 1981.

Rehearing Denied Feb. 9, 1982.

Dennis C. Roberts, Inc., Oklahoma City, for appellants.

Kornfeld, McMillin, Phillips & Upp, Joe E. Edwards, Richard Propester, Oklahoma City, for appellee, Larry Anderson.

LAVENDER, Justice:

For the purpose of testing the sufficiency of a petition to withstand a demurrer, a demurrer admits the truth of all facts well pleaded together with all inferences which may be legally drawn therefrom.[1] On appeal from an order sustaining a de-

1. *Bank of Wilson v. Pevehouse*, Okl., 426 P.2d 705 (1967); *Groves v. Board of County Com'rs,* *Washita County*, Okl., 429 P.2d 994 (1967).

murrer, the petition must be liberally construed and all of its allegations of fact must be taken as true, together with all reasonable inferences therefrom.[2]

Insofar as the same is pertinent to the issues hereinafter discussed, the petition alleges: Plaintiffs entered into a contract in writing with Defendant Titan Construction Corporation (Titan) to construct a dwelling upon Plaintiffs' lands according to plans to be drawn by Titan and written specifications which included "an Auxilliary Solar Energy System," said construction to be "in good substantial manner and with the same standards and quality of construction and materials" as were in another specified dwelling. The contract further provides: "That the Buyer (Plaintiff) for and in consideration of the faithful execution of the aforesaid work by the Contractor (Titan) and his furnishing all the labor and materials therefore, so as to fully carry out this contract to the satisfaction of the Buyer, does hereby agree to pay to said Contractor, the Total sum of $50,000 the sum of $1,000 which is herewith deposited with Titan Construction Corporation, the Contractor, as agent, receipt of which is hereby acknowledged, to be used by the Contractor for lot survey, plans and specifications, which will be credited by Contractor against the cost of the home, leaving a balance due Contractor of $49,000 not including the value of the lot therefor." Titan engaged the services of Defendant Anderson, a licensed architect, to design the house plans and auxiliary solar heat system. Plaintiffs allege that the auxiliary solar heat system was improperly designed by Defendant Anderson in breach of his duty to Titan to complete plans and specifications "in a good and professional manner ... for the benefit of the plaintiffs herein," resulting in monetary damages to Plaintiffs. Plaintiffs further allege that Defendant Anderson as a licensed architect knew or should have known that the auxiliary

solar energy system designed by him was not suitable for the climatic conditions prevailing in the area where the dwelling was to be constructed, and that the plans provided by Anderson were incomplete and not sufficiently detailed to enable workmen to read, interpret and follow the same.

 Plaintiffs contend that the language in the written contract, i.e., "... the sum of $1,000 which is herewith deposited with Titan Construction Corporation the Contractors, as agent, ... to be used by contractor for lot survey and plans and specifications ..." infers therefrom that Titan as agent of Plaintiffs contracted thereby with Defendant Anderson for Anderson to draw plans including the auxiliary solar system for the Plaintiffs. The intent of the parties manifested in the written agreement is that Titan was to survey the lot, draw plans and specifications for the house and to furnish all labor and materials for a total consideration of $50,000 with an advance payment to Titan of $1,000 "as agent" to cover the cost of the survey and plans and specifications. The burden is upon the Plaintiffs to allege facts essential to establish the existence of the agency relationship and the nature and extent thereof.[3] Only where the facts relied upon to establish the existence of the agency are undisputed and conflicting inferences cannot be drawn therefrom, the question of whether or not an agency exists as well as the powers and limitations thereof is one of law for the court.[4] But where, as here, the relationship of principal and agent may be inferred from the allegations of the petition, the existence of the agency relation and the terms and conditions thereof become a question of fact to be submitted to the jury.[5]

Plaintiffs maintain the petition states a cause of action in their favor as third party beneficiaries of the contract between Titan and Anderson.

**2.** *Hollamon v. First State Bank of Stroud*, Okl., 389 P.2d 352 (1964).

**3.** *Elliott v. Mutual Life Ins. Co. of New York*, 185 Okl. 289, 91 P.2d 746 (1939).

**4.** *Elliott v. Mutual Life Ins. Co. of New York, supra; Dauel v. Rose*, 123 Okl. 51, 251 P. 1000 (1926).

**5.** *Joachim v. Hawkins*, Okl., 311 P.2d 953 (1957).

By express statute, "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."[6] It is not necessary that the party be specifically named as a beneficiary but only that the contract be made "expressly for the benefit of a third person" and "expressly" simply means "in an express manner; in direct or unmistakeable terms; explicitly; definitely; directly."[7] A third party beneficiary of a contract may avail himself of its benefits and maintain an action thereon notwithstanding he was a stranger thereto, had no knowledge of the contract, and was not identified therein when it was made if it appears the parties intended to recognize him as a beneficiary.[8] It is the intention of the parties to the contract as reflected in the contract which must provide the answer to the question of whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts.[9]

Here, the contract between Titan and Anderson is one whereby Titan engaged Anderson to design house plans including an auxiliary solar heat system. Titan was a primary beneficiary of the contract, likewise the owner ·of the premises under construction was also a primary beneficiary of the contract, whose existence although not identified must have been known to Anderson. We therefore hold that under the allegations of the petition a third party beneficiary contract cause of action is stated.[10]

We next consider whether the petition states a cause of action for vicarious liability on the part of Anderson to the Keels

where the genesis of the relationship between and among the parties is a contract between Titan and Anderson, and the alleged wrong to the Keels emanates from Anderson's negligent breach thereof, where there is no privity of contract between the Keels and Anderson.

As a general rule, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner.[11] With respect to the skill required of a person who is to render services, it is a well-settled rule that the standard of comparison or test of efficiency is that degree of skill, efficiency, and knowledge which is possessed by those of ordinary skill, competency, and standing in the particular trade or business for which he is employed,[12] or as we said in *Cox v. Curnutt, supra,* "such care and skill as a reasonably competent and skillful person should have exercised in the performance of his contractual obligation."

In considering the responsibility or liability of architects in the performance of their duties, we held in *Wills v. Black and West, Architects* :[13]

"Where an architect agrees to prepare plans and specifications for the construction of a building, he is required to exercise ordinary professional skill and diligence and to conform to accepted architectural standards; but his undertaking does not imply or guarantee a perfect plan or satisfactory results, and he is liable only for failure to exercise reasonable care and professional skill."

Having established the duty of Anderson which is implied as a part of the contract,

6. 15 O.S.1971, § 29.

7. *Watson v. Aced,* Cal., 156 Cal.App.2d 87, 319 P.2d 83 (1957).

8. *Barbero v. Equitable Gen. Ins. Co.,* Okl., 607 P.2d 670 (1980).

9. *G. A. Mosites Co. of Ft. Worth, Inc. v. Aetna Cas. & S. Co.,* Okl., 545 P.2d 746 (1976).

10. *Tucker v. Zachary,* Okl., 269 P.2d 773 (1954).

11. 15 O.S.1971, § 171 provides: "Stipulations which are necessary to make a contract reasonable or conformable to usage, are implied in respect to matters concerning which the contract manifests no contrary intention."

*Cox v. Curnutt,* Okl., 271 P.2d 342; 17 Am. Jur.2d, Contracts, § 371, p. 814; 17 C.J.S., Contracts, § 328, p. 778.

12. 17 Am.Jur.2d, Contracts, § 371.

13. Okl., 344 P.2d 581 (1959) (citing with approval from *Smith v. Goff,* Okl., 325 P.2d 1061). In accord, see 5 Am.Jur.2d, Architects, § 8, pp. 669–671.

and having established the standard by which Anderson's performance is to be judged, there yet remains the question of whether that duty extended to the Keels so that its negligent breach by Anderson gave rise to a cause of action against him in favor of the Keels.

This portion of the petition does not plead an action for breach of contract, and therefore the question of whether there is or there is required to be privity between the Keels and Anderson is not here involved. This being an action in tort, the question of whether Anderson's alleged negligent breach of his contract with Titan brings the Keels within the orbit of Anderson's liability becomes one of proximate cause. It is the doctrine which limits a tortfeasor's liability to foreseeable consequences flowing from the negligent act which provides both the nexus between Anderson's tortious act and the Keels' right to bring suit against him therefore, and the safeguard against the exposure of Anderson to liability for his acts beyond that which is reasonable and just.

In *Lisle v. Anderson*,[14] we held: "Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person ... will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises ...."[15]

The requirement that before one may become liable for his tortious injury to another, the injury complained of must have been reasonably foreseeable to the tortfeasor is firmly ensconced in the Oklahoma law.[16] And, as we said in *Atherton v. Devine, supra*: "Causation traditionally lies within the realm of fact, not law. In an action for injuries caused by the defendant's negligence, it is a jury question whether the injurious consequences resulting from the negligence could have reasonably been foreseen or anticipated.... Foreseeableness becomes a question of law for the court only when one reasonable conclusion can be drawn from the facts."

Accompanying every contract is a common-law duty to perform it with care, skill, reasonable experience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract.[17] Thus, liability for negligent breach of a contract with a third party is not necessarily dependent upon a pre-existing privity in legal relationship between the person injured and the person causing the injury.[18]

We therefore hold that the allegations of Plaintiff's petition are sufficient to state a cause of action for negligent breach of contract against Defendant Anderson and in favor of Plaintiffs Keel.

ORDER OF THE TRIAL COURT REVERSED. CAUSE REMANDED FOR FURTHER PROCEEDINGS.

---

14. 61 Okl. 68, 159 P. 278 (1916).

15. *Foster v. Harding*, Okl., 426 P.2d 355 (1967); *Rose v. Sapulpa Rural Water Co.*, Okl., 631 P.2d 752 (1981).

16. *Champlin Oil and Refining Company v. Roever*, Okl., 477 P.2d 662 (1970); *Cunningham v. Pratt*, Okl., 392 P.2d 725 (1964); *Minor v. Zidell Trust*, Okl., 618 P.2d 392 (1980); *Long v. Ponca City Hospital, Inc.*, Okl., 593 P.2d 1081 (1979); *Atherton v. Devine*, Okl., 602 P.2d 634 (1979); *Landrum v. Standard Oil Company*, Okl., 499 P.2d 411 (1972); *Oklahoma Natural Gas Co. v. Courtney*, 182 Okl. 582, 79 P.2d 235 (1938); *Fields v. Volkswagen of America, Inc.*, Okl., 555 P.2d 48, 56, 57 (1976).

For a general discussion and annotation on the role of "foreseeability" in defining the proper limits of liability for conduct which uninten-tionally causes or contributes to injury or harm to the person or property of another, see 100 A.L.R.2d 944, 155 A.L.R. 157.

17. *New Trends, Inc. v. Stafford-Lowdon Co.*, Tex.Civ.App., 537 S.W.2d 778 (1976).

18. *Biakanja v. Irving*, 49 Cal.2d 674, 320 P.2d 16, 64 A.L.R.2d 1358 (1958); *Navajo Circle, Inc. v. Development Concepts*, Fla.App., 373 So.2d 689 (1979); *Luciani v. High*, Fla.App., 372 So.2d 530 (1979); *Lucas v. Hamm*, Cal., 364 P.2d 685 (1961); *Connor v. Great Western Savings and Loan Ass'n*, 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1969); *J'Aire Corp. v. Gregory*, 157 Cal.Rptr. 407, 598 P.2d 60 (1979); 35 A.L.R.3d 505; 68 A.L.R. 375; 34 A.L.R. 67; 59 A.L.R.2d 1081.

IRWIN, C. J., BARNES, V. C. J., WIL-SON, Senior Justice, and HODGES, DOO-LIN, HARGRAVE and OPALA, JJ., concur.

SIMMS, J., dissents.

WILLIAMS, J., certified his disqualification. The Honorable Charles M. Wilson was appointed in his stead.