**VANGUARD PRODUCTION, INC.,**
Plaintiff–Appellant,

v.

**Billy L. MARTIN, David D. Morgan, and Ames, Ashabranner, Taylor, Lawrence, Laudick and Morgan, a Partnership, Defendants–Appellees.**

No. 88–1645.

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1990.

**376**

John D. Boydston (James R. Hicks, of Morrel & West, Inc., Tulsa, Okl., with him on the briefs) of Boyston & Payton, Tulsa, Okl., for plaintiff-appellant.

Todd Maxwell Henshaw (Jim F. Gassaway of Houston and Klein, Inc., Eugene Robinson of McGivern, Scott, Gilliard, McGivern & Robinson, Tulsa, Okl., and Tom J. Laub, Okmulgee, Okl., with him on the brief), of Houston and Klein, Inc., Tulsa, Okl., for defendant-appellee Billy L. Martin.

Joseph R. Farris (Michael A. Conger of Feldman, Hall, Franden, Woodard & Farris, Tulsa, Okl., with him on the brief) of Feldman, Hall, Franden, Woodard & Farris, Tulsa, Okl., for defendants-appellees David D. Morgan and Ames, Ashabranner, Taylor, Lawrence, Laudick and Morgan, a Partnership.

* The earlier opinion in this case, *Vanguard Production, Inc. v. Martin*, 890 F.2d 276 (10th Cir. 1989), is hereby withdrawn.

## ORDER ON REHEARING *

Before HOLLOWAY, Chief Judge, MOORE and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff Vanguard Production, Inc. ("Vanguard") appeals the district court's grant of a motion for summary judgment in favor of defendants, attorneys Billy Martin and David Morgan and the law firm of Ames, Ashabranner, Taylor, Lawrence, Laudick and Morgan ("Ames, Ashabranner") (collectively "defendants"). Vanguard contends that the district court erred in its rulings that (1) as a matter of law under *Allred v. Rabon*, 572 P.2d 979 (Okla. 1977), an attorney cannot be liable for malpractice to persons other than their immediate clients, and alternatively, (2) even if *Bradford Securities Processing Services, Inc. v. Plaza Bank & Trust*, 653 P.2d 188 (Okla.1982), applies, defendants are not liable based on the facts asserted by Vanguard. We hold that the Oklahoma Supreme Court's decision in *Bradford* controls this case. An attorney owes a common law duty of ordinary care and workmanlike performance on the underlying contract with his client. When an attorney knows or should know that an opinion he prepares may be exhibited to nonclients, this common law duty extends to those same nonclients that an ordinarily prudent attorney under the circumstances would reasonably foresee could be injured by the attorney's advice contained in and explanatory of the opinion. We further hold that Vanguard has pleaded sufficient facts under *Bradford* to establish a jury question on the element of proximate causation.

In early 1985, Vanguard began negotiations for an assignment of an oil and gas lease covering property in Okmulgee County, Oklahoma. James Hadsell, an officer and director of Vanguard, represented Vanguard in negotiations with the seller and the lender, Glenfed. Vanguard saw a title opinion on the lease property dated

June 25, 1985, which was prepared by Martin, an attorney in Okmulgee County, for a third party. This third party opinion on the lease property contained a caveat stating that Texas Rose Petroleum had filed suit against the seller for damages involving the lease. Around August 9, 1985, Vanguard executed a promissory note for $780,000 in favor of Glenfed, and executed a mortgage, security agreement, financing statement, and assignment in favor of Glenfed as security for the promissory note. Glenfed's loan agreement with Vanguard provided that Glenfed would select the attorneys to do the title and closing work, and that Vanguard would pay for the attorneys' fees. Glenfed selected the law firm of Ames, Ashabranner. Morgan, a partner in Ames, Ashabranner, did the actual legal work and hired Martin, the local attorney in Okmulgee County, to assist him.

Morgan and Martin incorrectly advised Vanguard that the claim on the lease by Texas Rose Petroleum described in Martin's third party title opinion on the lease property would not adversely affect the title because a summons had not been issued. Morgan and Martin told Vanguard that after 120 days Texas Rose Petroleum's case could be dismissed and that the dismissal would cure the defect in the lease title. Morgan and Martin procured dismissal of the suit after 120 days. Morgan and Martin then deleted any mention of the Texas Rose Petroleum claim in the final opinion prepared for Glenfed. The deal was closed around August 27, 1985. The Texas Rose Petroleum suit was refiled, however, about thirty days later. The trial court in the Texas Rose Petroleum litigation eventually ruled that Vanguard and Glenfed had actual knowledge of the adverse Texas Rose Petroleum claim before entering into the lease transaction, and therefore sustained Texas Rose Petroleum's claim to 75% of the lease.

Vanguard sued Martin, Morgan, and Ames, Ashabranner, for malpractice. The district court granted the defendants' motion for summary judgment on the grounds that the defendants owed no duty to Vanguard because there was no attorney/client

relationship between the defendants and Vanguard. The district court also noted that even under the *Bradford* rule, liability did not lie because it was not reasonably foreseeable to the defendants that Vanguard would rely solely on the title opinion, prepared by Morgan and Martin, when they were in fact working for Glenfed.

 We review de novo the district court's conclusion of law that the defendants owed no duty to Vanguard. *See Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir.1987). In reviewing the district court's ruling that Vanguard did not plead sufficient facts to show reasonable foreseeability even if *Bradford* applies, we determine whether, viewed in the light most favorable to Vanguard, a material question of fact exists. *See McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). Where a question of material fact exists, summary judgment is inappropriate. *Id.*

The Oklahoma Supreme Court's decision in *Bradford* controls this case. In *Bradford*, a pledgee who had foreclosed and become a forced purchaser of industrial revenue bonds that proved to be of little or no value sued the attorney who prepared the bond opinion for alleged negligence. The pledgee was not a client of the attorney. The pledgee alleged that the bond attorney knew that his bond opinion would appear on the bond certificates and that a purchaser of the bonds foreseeably would rely on his bond opinion. The district court dismissed the pledgee's complaint for failure to state a claim, ruling in part that there could be no liability because the pledgee was not the attorney's client. The pledgee appealed to this court and we certified the following question to the Oklahoma Supreme Court:

Does a pledgee who forecloses on bonds state a cause of action against bond counsel for alleged negligence in preparing his opinion which made representations, *inter alia*, of payment of consideration, legality of the bond issue, and tax-exempt status of the bonds, where counsel allegedly knew that his legal

opinion would appear on the bond certificates and be relied on by the purchasers of the bonds and where the opinion was also relied on by the pledgee?

*Bradford*, 653 P.2d at 189.

The Oklahoma Supreme Court replied that the pledgee's complaints stated a cause of action under Oklahoma law. Privity of contract does not apply to tort actions under Oklahoma law. *See Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1232 (Okla.1981). The *Bradford* court stated that to determine an attorney's negligence the jury must determine whether the attorney's conduct was *"the conduct of an ordinarily prudent man based upon the dangers he should reasonably foresee* TO THE PLAINTIFF OR ONE IN HIS POSITION *in view of all the circumstances of the case* such as to bring the plaintiff within the orbit of defendant's liability." *Id.* at 191 (emphases in original).

Morgan and Ames, Ashabranner argue, however, that the *Bradford* test applies only when there is a duty running from defendants to the plaintiff, and that in this case the defendants owed no such duty to Vanguard. We agree that *Bradford* applies only when a duty exists and hold that under the facts of this case a duty to Vanguard arose under Oklahoma law. In *Keel*, 639 P.2d 1228, the Oklahoma Supreme Court held that

> [a]s a general rule, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner.

*Id.* at 1231 (footnote omitted). The court then stated that

> the question of whether Anderson's alleged negligent breach of his contract with Titan brings the Keels within the orbit of Anderson's liability becomes one of proximate cause. It is the doctrine which limits a tortfeasor's liability to foreseeable consequences flowing from the negligent act which provides both the nexus between Anderson's tortious act and the Keels' right to bring suit against him therefore, and the safeguard against the exposure of Anderson to liability for

his acts beyond that which is reasonable and just.

*Id.* at 1232. *Keel* thus stands for the proposition that where there is a contract for services a common law duty of workmanlike performance arises and that a third party beneficiary is entitled to sue for a breach of that duty.

*Bradford* extends the rule in *Keel* to attorneys and refines the test for determining the class of persons which may sue for breach of the common law duty of workmanlike performance. In its interpretation of *Keel*, the Oklahoma Supreme Court stated:

> 3. Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person will be in danger of receiving an injury, *a duty to exercise ordinary care to prevent such injury arises.*

*Bradford*, 653 P.2d at 190 (emphasis added). In our view a contract for legal services is a contract for services giving rise to the duty of workmanlike performance. The record in this case reveals extensive communications between the attorneys, Martin and Morgan, and the purchaser, Vanguard, concerning the title opinion. The record also shows that all parties, including Martin, Morgan, Vanguard, and Glenfed, were concerned about the Texas Rose Petroleum suit. Thus, we find that an ordinarily prudent attorney in the position of the defendants would reasonably have apprehended that Vanguard was among the class of nonclients which, as a natural and probable consequence of the attorneys' actions in preparing the title opinion for Glenfed, could be injured. Thus, we hold that the defendants owed a duty of ordinary care, *Bradford*, 653 P.2d at 190, and workmanlike performance, *Keel*, 639 P.2d at 1231, to Vanguard in the performance of their contract for legal services with Glenfed. We stress that our holding only addresses the question of the duty of the defendants owed to Vanguard and not the question of whether Martin's, Morgan's, and Ames, Ashabranner's acts were the proximate cause of Vanguard's injuries. *See Bradford*, 653 P.2d at 190–91; *Keel*, 639 P.2d at 1232.

Our interpretation is consistent with *Bradford*'s treatment of *Keel* and *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). The Oklahoma Supreme Court rejected the argument that *Bradford* was distinguishable from *Keel* by the relatively larger number of people who might seek redress. *Bradford*, 653 P.2d at 190. The Oklahoma Supreme Court also rejected as unpersuasive a similar rationale advanced by then-Judge Cardozo in *Ultramares*, stating

> we hold that while the apprehensions [of extending liability "in an indeterminate amount for an indeterminate time to an indeterminate class"] expressed in *Ultramares* may or may not be a telling argument as to whether the harm to a particular plaintiff was *foreseeable* to the defendant, **their significance is relegated to foreseeability as it relates to proximate cause and must be considered only in that light.**

*Bradford*, 653 P.2d at 190–91 (boldface added; other emphases in original). The boldfaced language indicates that once a plaintiff is in the class of persons which could foreseeably be injured by the defendants' actions, arguments about remoteness of relation, adversity of interest, etc., go to the element of proximate causation and thus to the *"jury question* whether the *injurious consequences resulting from the negligence could have reasonably been foreseen or anticipated." Id.* at 190 (emphasis added).

 Having found that defendants owed a duty to Vanguard, we next look to whether, viewed in the light most favorable to Vanguard, Vanguard pleaded sufficient evidence to establish a question of material fact on the element of proximate causation, *i.e.,* whether the type and kind of injury to Vanguard was a reasonably foreseeable consequence of the defendants' breach of the duty of ordinary care and workmanlike performance. Considerations such as the nature of the parties' relationship, the degree of adversity between the parties, commercial practices, and the indeterminancy of the class of nonclients affected, go to the reasonable foreseeability of the type and kind of injury suffered by the plaintiff.

If the type and kind of injury suffered by the plaintiff is not a reasonably foreseeable consequence of the defendants' actions, then proximate causation is not established and the plaintiff's case will fail.

James C. Hadsell, the officer and director of Vanguard who conducted the negotiations for Vanguard, stated in his affidavit that Martin claimed he had 25 years of experience and "that my forte is titles," that Morgan and Ames, Ashabranner represented themselves as being highly qualified in oil and gas matters, and that both Martin and Morgan asserted that "they were 'specialists' in oil and gas title opinions." Hadsell also stated that the agreement between Vanguard and Glenfed specified that the attorney hired to examine title for Glenfed "was to work with and to be paid by Vanguard." Hadsell also averred that Morgan directed and orchestrated the entire closing. Most importantly, Hadsell stated that he had seen the original third party title opinion that mentioned the Texas Rose Petroleum lawsuit, that Morgan stated the transaction could not close until the Texas Rose Petroleum lawsuit was dismissed, and that Morgan "was very firm in this position that dismissal of the Texas Rose lawsuit would cure the title defect." Hadsell also stated that Martin concurred that a valid closing could occur after the Texas Rose lawsuit was dismissed. Hadsell further stated that:

9. That the final title opinion dated August 27, 1985, made no reference to the Texas Rose lawsuit. It was deleted based upon the legal advice of David D. Morgan who instructed Billy L. Martin to delete the reference to Texas Rose altogether.

. . . .

15. That [Hadsell] justifiably relied upon Mr. Morgan's and Mr. Martin's assurances that the title was legally good and marketable and *these attorneys knew full well that Vanguard was solely relying on their legal services and advice.*

. . . .

17. That the *final, fatal* decision to delete all reference to the Texas Rose title problem was made by and at the

insistence of Mr. Morgan, in consultation with Mr. Martin.

Although no single incident definitively shows that the kind of injury suffered by Vanguard was reasonably foreseeable, in the aggregate we find that this affidavit states sufficient evidence to create a question of material fact concerning the proximate cause of Vanguard's injury. The grant of summary judgment was thus improper. *See McKenzie v. Mercy Hosp.*, 854 F.2d at 367.

The petition for rehearing is GRANTED. We withdraw our earlier opinion, substitute this revised opinion, and REVERSE and REMAND for further proceedings in accordance with this opinion.