2002 OK CIV APP 107

Tammy BROWN, Plaintiff/Appellant,

v.

STATE FARM FIRE AND CASUALTY COMPANY and State Farm General Insurance Company, Defendants,

and

JJMA Investigations and Consultants and Jody Cooper, Defendants/Appellees.

No. 97,485.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 22, 2002.

Certiorari Denied Oct. 15, 2002.

**218**

Richard D. Gibbon, Tulsa, for Plaintiff/Appellant.

Ray H. Wilburn, Michael J. Masterson, Philard L. Rounds, Paul A. Derks, Tulsa, for Defendants/Appellees.

MITCHELL, J:

¶ 1 Plaintiff/Appellant, Tammy Brown ("Brown"), seeks review of an order granting summary judgment in favor of Defendants/Appellees, JJMA Investigations and Consultants ("JJMA") and Jody Cooper ("Cooper"). Defendant State Farm Fire and Casualty Company ("State Farm") issued an insurance policy on Brown's Henryetta, Oklahoma home covering loss due to fire. On March 17, 2000, and again on March 18, 2000, fires occurred at the property causing damage alleged to be in excess of $60,000.00. State Farm engaged Defendants/Appellees, JJMA/Cooper, to investigate the cause of the blaze. In their report, JJMA/Cooper concluded, without interviewing either Brown or any of the fire-fighters involved, that there was only one fire, and that it resulted from "the deliberate act of a person or persons." The report also stated that some of the damage to the home that the fire-fighters caused in battling the blaze existed prior to the fire. Based at least in part on this report, which it

believed to be accurate, State Farm denied Brown's claim under the policy.

¶ 2 Brown filed suit, alleging bad faith and breach of contract on the part of State Farm, as well as negligent investigation and tortious interference with contractual relations on the part of JJMA/Cooper. Brown settled her claims against State Farm for an undisclosed amount and State Farm is not a party to this appeal.

¶ 3 In granting JJMA/Cooper's motion for summary judgment on Brown's remaining claims, the trial court recognized that while there are no reported cases on point in Oklahoma, a majority of courts in other states have held that an insured cannot maintain a separate tort action for negligence directly against an independent insurance investigator employed by the insurer. Noting the lack of contractual privity between a policy holder and an independent insurance investigator, these out-of-state courts have concluded that an investigator owes no duty of care to an insured with regard to the handling of an investigation and that any liability in negligence exists solely between the insurer and its investigator. Consistent with this approach, the trial court held that Brown could not pursue a negligence claim directly against JJMA/Cooper as a matter of law.

¶ 4 Concerning Brown's claim for tortious interference with contract, the trial court also ruled in favor of JJMA/Cooper, citing "a complete lack of evidence" tending to show that JJMA/Cooper intentionally induced State Farm to deny Brown's insurance claim. Consequently, the trial court held that Brown also failed to make out a *prima facie* case of tortious interference with contract. This appeal ensued.

¶ 5 The novel question before this Court is what duty, if any, an independent investigator or adjuster retained by an insurance company owes to one who holds an insurance policy issued by said company. Also before this Court is the question of whether an insured may bring a tortious interference with contract action directly against an independent investigator hired by the insurance company and, if so, whether Brown offered

evidence sufficient to defeat summary judgment on her tortious interference claim.

## I. Negligence

¶ 6 "The threshold question in any suit based on negligence is whether defendant has a duty to the particular plaintiff alleged to have been harmed." *Rose v. Sapulpa Rural Water Co.*, 1981 OK 85, ¶ 17, 631 P.2d 752, 756. Whether such a duty exists is a question of law. *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶ 22, 795 P.2d 516, 521. We review questions of law *de novo*, which involves a plenary, independent and non-deferential examination of a trial court's legal rulings. *Jackson v. Jackson*, 2002 OK 25, ¶ 2, 45 P.3d 418, 422.

¶ 7 "Oklahoma courts have recognized that the existence of a duty depends on the relationship between the parties and the general risks involved in the common undertaking." *Wofford*, ¶ 10, 795 P.2d at 519. "Duty of care is not a concept that arises only by statute.... Whenever a person is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury." *Id., citing Union Bank of Tucson v. Griffin*, 1989 OK 47, ¶ 13, 771 P.2d 219, 222.

¶ 8 The most important consideration in establishing duty is foreseeability. *Wofford*, ¶ 11, 795 P.2d at 519. "As a general rule, 'a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.' " *Id., citing Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976). "Foreseeability as an element of duty establishes a 'zone of risk', that is, whether the conduct 'creates a generalized and foreseeable risk of harming others.' " *Smith v. Speligene*, 1999 OK CIV APP 95, ¶ 11, 990 P.2d 312, 315, *citing Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 8, 913 P.2d 1318, 1321 and *McCain v. Florida Power Corp.*, 593 So.2d 500, 503.

¶ 9 While it is well-settled that a non-insurer defendant, such as an adjuster or investigator, who is not a party to the insurance contract is not subject to an implied duty of good faith and fair dealing vis-a-vis the insured,[1] *see Timmons v. Royal Globe Ins. Co.*, 1982 OK 97 ¶ 17, 653 P.2d 907, 913, there are no reported decisions in Oklahoma addressing whether independent adjustors or investigators owe a duty of care to insureds, such that they may be held liable directly to insureds in negligence. The states are divided on the issue, with the majority holding that independent investigators are not directly liable to insureds in negligence.[2]

---

1. Brown did not allege bad faith against JJMA/Cooper.

2. The following cases hold that independent insurance adjusters do not have a duty of care vis-a-vis the insured: *Sanchez v. Lindsey Morden Claims Services, Inc.*, 72 Cal.App.4th 249, 84 Cal.Rptr.2d 799, (Cal.Ct.App.1999) (holding that policy concerns—including the fact that adjuster's role in claims process is secondary to that of insurer but duty of care could expose adjuster to greater liability, the improbability that imposition of a duty would enhance deterrence, the likelihood that a duty would subject adjuster to conflicting loyalties—as well as the general law of agency militate against imposing a duty of care owed by insurer-retained adjusters to insureds); *Meineke v. GAB Business Services, Inc.* 195 Ariz. 564, 991 P.2d 267, 270–71 (Ct.App. 2000) (holding that the relationship between adjuster and insured is sufficiently attenuated by the insurer's control over the adjuster that adjuster owes no legal duty to insureds and is not subject to negligence liability for allegedly mishandling claim); *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 917 (Tex.App.1997) (holding that insured may not maintain negligence action against adjuster because adjuster's duties are contractual ones owed solely to insurer); *King v. Nat'l Security Fire and Casualty Co.*, 656 So.2d 1338, 1339 (Fla.Dist.Ct.App.1995) (holding that insured may not bring simple negligence action against independent insurance adjuster because adjuster's duty arises out of the underlying contract between adjuster and insurer and is owed to insurer only; adjuster does not owe a duty to insured unless insured is suing for an intentional tort); *Velastequi v. Exchange Ins. Co.*, 132 Misc.2d 896, 505 N.Y.S.2d 779, 780 (N.Y.Civ.Ct. 1986) (holding adjuster's duty is to insurer and based in contract; therefore, insured may not sue adjuster for negligence in investigating claim).

Whereas the Supreme Courts of New Hampshire and Alaska have held that independent insurance adjusters are liable in negligence directly

¶ 10 The decision of New Hampshire's Supreme Court in *Morvay v. Hanover Ins. Co.*, 127 N.H. 723, 506 A.2d 333 (1986), is exactly on point. Plaintiffs, the Morvays, filed a claim under their insurance policy with Hanover after their property was damaged by fire. Hanover hired Verity Research Limited to investigate the fire. Norman Roberts, the Verity investigator assigned to the case, filed a report with Hanover indicating that the fire was incendiary. Consequently, Hanover refused payment on the Morvays' claim. In the resultant lawsuit, in addition to claims against Hanover, the Morvays alleged that Verity and Roberts were liable for negligent investigation. The trial court dismissed the claim, and the New Hampshire Supreme Court reversed. The court reasoned that the investigators "were fully aware that the plaintiffs could be harmed financially if they performed their investigation in a negligent manner and rendered a report to Hanover that would cause the company to refuse payment to the plaintiffs," and that they also knew that there was "a mutual duty of fair dealing between Hanover and the plaintiffs." *Id.* at 335. The court further reasoned that "[a]lthough the contractual relationship exists solely between the insurer and the investigators, and the investigators may give reports only to the insurer, the insured is a foreseeably affected third party." *Id.* Accordingly, the New Hampshire Supreme Court held that "the investigators owe a duty to the insured as well as to the insurer to conduct a fair and reasonable investigation of an insurance claim and that the motion to dismiss should not have been granted." *Id.*

¶ 11 While there is no comparable Oklahoma jurisprudence on point, there are several Supreme Court cases that shed light on this issue. For example, in *Keel v. Titan Const. Corp.*, 1981 OK 148, 639 P.2d 1228, the Supreme Court analyzed whether homeowners could state a cause of action for negligent breach of contract as third-party beneficiaries of an agreement between their construction company and an architect who improperly designed an auxiliary solar heating system for homeowners' house in violation of the architect's contractual duty to the construction company. The Court reasoned that because the architect must have known of the homeowners' general existence, if not their specific identities, both the construction company *and* the homeowners were primary beneficiaries of the contract between the construction company and the architect, even though the homeowners were not actually parties to the contract. *Id.* ¶ 6, 639 P.2d at 1231.

¶ 12 Because the action was for negligent breach of contract, the Supreme Court concluded that "the question of whether there is or there is required to be privity ... is not here involved. This being an action in tort, the question ... becomes one of proximate cause." *Id.* ¶ 11, 639 P.2d at 1232. Noting that a negligent failure to perform the services promised in a contract "with care, skill, reasonable experience and faithfulness ... is a tort, as well as a breach of contract," the Court held that "liability for negligent breach

---

to insureds: *Morvay v. Hanover Ins. Co.*, 127 N.H. 723, 506 A.2d 333, 335 (1986) (reversing dismissal of insured's negligence claim against independent agents hired by insurer to investigate cause of fire, and holding that agents owe a duty to insureds as well as to insurer to conduct a fair and reasonable investigation despite lack of privity with insureds, where agents were fully aware that insureds could be harmed financially if agents were to perform their investigation in a negligent manner and render a report that would cause insurer to refuse payment to insureds); *Continental Ins. Co. v. Bayless and Roberts, Inc.*, 608 P.2d 281, 287–88 (Alaska 1980) (holding that insurance adjuster, as an agent acting within the scope of his authority, could be held liable in negligence directly to insured for failure to adequately investigate wrongful death claim despite

lack of privity, which is necessary only for claim of breach of fiduciary duty of good faith arising out of insurance contract); *see also Bass v. California Life Ins. Co.*, 581 So.2d 1087, 1090 (Miss. 1991) (holding that while adjusters are not liable to insureds for simple negligence in adjusting claims, they can incur liability when their conduct constitutes gross negligence, malice, or reckless disregard for insureds' rights); *cf. Scott Wetzel Services, Inc. v. Johnson*, 821 P.2d 804 (Colo.1991) (holding that an independent claims adjusting service owes a duty of good faith and fair dealing to a claimant asserting a right to benefits under Colorado's workers' compensation act, but noting that the duty arises from the act itself, and not from the contract between the employer and the adjusting service or from the law of principal and agent).

of a contract with a third party is not necessarily dependent upon a pre-existing privity in legal relationship between the person injured and the person causing the injury" and that the allegations in the homeowners' petition were thus sufficient to state a cause of action for negligent breach of contract against the architect. *Id.* ¶¶ 14, 15, 639 P.2d at 1232.

¶ 13 Having determined in *Keel* that privity has no applicability in the realm of Oklahoma tort law, the Supreme Court, in *Bradford Securities v. Plaza Bank and Trust,* 1982 OK 96, ¶¶ 5–6, 653 P.2d 188, 190–91, held that a bond counsel may be liable to a third party for malpractice for breaching a duty owed to the client. The Supreme Court reasoned that while the numerosity or indeterminacy of third parties potentially injured by a defendant's tortious acts may be "a telling argument as to whether the harm to a particular plaintiff was *foreseeable* to the defendant," the significance of this consideration "is relegated to foreseeability as it relates to proximate cause and must be considered only in that light." *Id.* (emphasis in original). In reaching this conclusion, the Supreme Court expressly rejected the oft-cited opinion by Cardozo, J., in *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931), holding that defendants are not liable for professional malpractice to third parties for the breach of a duty to the client and held that:

> the formula that should govern the jury in determining the issue of negligence is, *is the conduct of an ordinarily prudent man based upon the dangers he should reasonably foresee* TO THE PLAINTIFF OR ONE IN HIS POSITION *in view of all the circumstances of the case* such as to bring the plaintiff within the orbit of defendant's liability; not the particular hurt that actually befell the plaintiff, but the likelihood of some such harm as he suffered; and if the defendant fails to exercise the care that an ordinarily prudent person should have exercised under the circumstances, he is liable for the injuries plaintiff suffered as a result of such negligence.

*Id.,* ¶ 10, 653 P.2d at 191 (emphasis in original).

¶ 14 In addition to its decisions regarding architects and bond counsel, the Supreme Court has also held that an independent auditor's duty of care in auditing a client's financial statements extends to persons other than the audit client, where those third parties were foreseeable and it was known that they would rely on the agent's professional services. In *Stroud v. Arthur Andersen & Co.,* 2001 OK 76, 37 P.3d 783, a former client sued Andersen alleging the negligent performance of financial audits and seeking damages for economic injuries allegedly emanating from flawed audits of Stroud Crop, Inc. (SCI) and Insurance Company of the Prairie States' (ICOPS) financial statements. Steve Stroud was primary owner of both companies. Plaintiffs claimed that Andersen owed them a professional duty of care which it breached by rendering flawed audits and that in reliance upon Andersen's defective work product both Stroud and SCI made several business decisions which resulted in their injury. Andersen contended that to the extent the alleged economic injuries were compensable at all, they would be so only to the corporate entity (SCI) and not to its shareholder (Stroud), because Stroud was not a party to the audit contract.

¶ 15 Noting that it was "mindful of the enhanced obligations and responsibilities owed to the public by a person who dons the mantle of a professional," the Supreme Court cited with favor the Restatement (Second) of Torts § 552, "Information Negligently Supplied for the Guidance of Others":

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) Torts, § 552 (emphasis added); *Stroud,* ¶ 34, 37 P.3d at 794. The Supreme Court held that Stroud was a proper party plaintiff as an individual because it was foreseeable that he would rely on Ander-

sen's audits and he thus fell within the ambit of that group of persons to whom Andersen owed a duty of care. *Id.* ¶ 17, 37 P.3d at 789.

¶ 16 Unlike in *Stroud,* only State Farm took any affirmative action in reliance on JJMA/Cooper's investigation report; Brown herself did not. In the context of her insurance claim, however, it was reasonable for Brown to expect that State Farm, through it's agent JJMA/Cooper, would perform a non-negligent investigation of the fire. Indeed, it is indisputable that "[b]oth the insured and the insurer [had] a stake in the outcome of the investigation." *Morvay,* 506 A.2d at 335. Whether the Oklahoma Supreme Court would find that an insured's financial interest in the outcome of an insurance investigation would satisfy the reliance component discussed in *Stroud* is unclear.

¶ 17 Our analysis of Oklahoma case law is not limited to *Keel, Bradford,* and *Stroud,* however. In *Lockhart v. Loosen,* 1997 OK 103, 943 P.2d 1074—an opinion cited by both parties in their briefs on summary judgment—the plaintiff, Ms. Lockhart, sought damages in simple negligence against her husband's paramour, Ms. Loosen, for transmitting genital herpes to Mr. Lockhart, who then infected plaintiff. In reversing the trial court's dismissal of Ms. Lockhart's claim, the Supreme Court reasoned that:

> [a]n essential element of Lockhart's proof is that a duty of care is owed to her by Loosen. Actionable negligence requires that Loosen's purported failure to inform Mr. Lockhart of her contagion be the *direct* cause of the plaintiff's injury—*i.e.,* the contraction of herpes. While normally Loosen would owe no duty of care to the wife, a third party, every person is under a duty to exercise due care in using that which he/she controls so as not to injury another. If Loosen knew or should reasonably have known that she had herpes and copulated with Mr. Lockhart during a period when she was infectious, under common-law principles she had a duty to warn him of her contagion. Further, if Loosen knew that Mr. Lockhart was copulating with another person and could identify that person [whether that person was married to Mr. Lockhart or not] it would

be reasonably foreseeable to Loosen that silence about her infectious state—*i.e.* a breach of the duty of care she owed to her sexual partner—could result in the transmittal of herpes to that third person. Under this hypothetical factual scenario, the trial court could determine that it was reasonably foreseeable to Loosen that a *natural and probable* consequence of her silence would be the transmittal of this highly contagious disease to this plaintiff.

*Id.,* ¶ 13, 943 P.2d at 1080 (emphasis in original). Given that it was unclear from the record whether, before Mr. Lockhart engaged in sex with his wife, either Ms. Loosen informed Mr. Lockhart of her disease or Mr. Lockhart discovered his infection on his own—either of which would have been supervening causes breaking the chain of causation between Ms. Loosen and Ms. Lockhart—the Supreme Court held that this dearth of facts rendered the trial court's dismissal of Ms. Lockhart's claim premature, and remanded the action to the trial court for additional findings of fact.

¶ 18 In *Brigance v. Velvet Dove Restaurant, Inc.,* 1986 OK 41, 725 P.2d 300—which Brown cited in her summary judgment response—the Supreme Court again reversed the trial court's dismissal of the plaintiff's negligence claim, holding that:

> one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person. It is not unreasonable to expect a commercial vendor who sells alcoholic beverages for on the premises consumption to a person he knows or should know from the circumstances is already intoxicated, to foresee the unreasonable risk of harm to others who may be injured by such person's impaired ability to operate an automobile.

*Id.,* ¶ 17, 725 P.2d at 304. Recognizing that "[o]rdinarily the question of causation in a negligent tort case is one of fact for the jury and becomes one of law only when there is no evidence from which the jury could reasonably find a causal nexus between the negligent act and the resulting injuries," the Supreme Court concluded that a jury could find that the tavern keeper "could have rea-

sonably foreseen and anticipated the possible consequences in selling alcoholic beverages to a noticeably intoxicated patron who intended to drive an automobile and that the sale may have been a proximate cause of the alleged injuries." *Id.*, ¶ 23, 725 P.2d at 305.

¶ 19 We believe the decision of the New Hampshire Supreme Court in *Morvay* is the result most consistent with the Oklahoma decisions in *Lockhart* and *Brigance*. Accordingly, we hold, as did *Morvay*, that independent insurance investigators "owe a duty to the insured as well as to the insurer to conduct a fair and reasonable investigation of an insurance claim." *Morvay*, 506 A.2d at 335. For this reason, it was error for the trial court to grant JJMA/Cooper's motion for summary judgment on Brown's negligence claim.

## II. Tortious Interference with Contract

¶ 20 To recover in an action for malicious interference with contract or business relations a plaintiff must show: (1) That he or she had a business or contractual right that was interfered with; (2) that the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable; and, (3) that damage was proximately sustained as a result of the interference. *Mac Adjustment, Inc. v. Property Loss Research Bureau*, 1979 OK 41, ¶ 5, 595 P.2d 427, 428. It is well-settled that one who is acting in a representative capacity for a party to a contract cannot be liable for wrongfully interfering with that contract. *Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, ¶ 18, 911 P.2d 1205, 1210 (holding that defendant who was acting as agent for mineral owners could not, as a matter of law, intentionally interfere with contracts between mineral owners and their lessees). Although an agent or employee of a principal can be held liable for tortious interference with a contract between the principal and a third party where the agent or employee acts outside the scope of his agency or employment, Brown has made no such claim here. *Martin v. Johnson*, 1998 OK 127, ¶ 32 975 P.2d 889. Because JJMA/Cooper was acting as an agent of State Farm in carrying out the fire investigation, it cannot, absent an allegation that it was acting outside the scope of its agency, be liable to Brown for tortious interference with Brown's insurance contract with State Farm.

¶ 21 In addition, we see no reason to disturb the trial court's finding as to the "complete lack of evidence submitted by the plaintiff which would present the jury with any questions of fact which would tend to show the investigatory company intentionally induced the insurance company to deny this claim by any predatory activity, self dealing, or other tortious conduct." For purposes of reviewing a summary judgment, this court, like the trial court, makes a *de novo* review of the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Fehring v. State Ins. Fund*, 2001 OK 11, ¶ 3, 19 P.3d 276, 278. Just as in the trial court, all inferences and conclusions drawn from the evidentiary materials are viewed in a light most favorable to the non-moving party. *Id.* Because, as noted by the trial court, such material evidence is indeed lacking, the summary judgment on Brown's tortious interference with contract claim is affirmed.

¶ 22 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

HANSEN, P.J., and ADAMS, J., concur.