2006 OK CIV APP 128

George CHRISTIAN and Lawanna Christian, individually and on behalf of all others similarly situated, Plaintiffs/Appellants,

v.

**FIRST CAPITAL BANK,**
Defendant/Appellee.

No. 102,804.

Court of Civil Appeals of Oklahoma,
Division No. 4.

June 13, 2006.

Certiorari Denied Oct. 3, 2006.

L. Mark Bonner, Emmanuel E. Edem, Norman & Edem, PLLC, Oklahoma City, for Plaintiffs/Appellants.

O. Clifton Gooding, The Gooding Law Firm, Oklahoma City, Stanley R. Parker, Topeka, KS, for Defendant/Appellee.

DOUG GABBARD II, Presiding Judge.

¶1 This is an appeal by plaintiffs, George and LaWanna Christian (Customers), from the trial court's grant of summary judgment in favor of defendant, First Capital Bank (Bank). Customers asserted Bank was required under an agreement with the U.S. Department of Agriculture's Farm Service

Agency (FSA) to reduce the interest rate it charged them for an agricultural loan. Based on the record and applicable law, we affirm in part, reverse in part, and remand for further proceedings.

## UNDISPUTED FACTS

¶ 2 Bank made an agricultural loan to Customers pursuant to the FSA's Guaranteed Loan Program. Under the Program, the FSA guarantees up to 90 percent of qualifying loans made by local agricultural lenders. The FSA's website states the Program benefits qualifying farmers, who receive credit at reasonable terms; banks, which receive servicing fees and additional business; and local communities, which receive protection for family farmers. The FSA also operates an Interest Assistance Program, described on its website as follows:

> The **Interest Assistance Program** enables lenders to provide credit to operators of family farms who do not have the financial resources to meet the standard repayment terms. Under this program, FSA enters into an agreement with the lender reducing the interest rate charged to the borrower.[1]

¶ 3 Pursuant to the program and the loan agreement, Customers, Bank, and the FSA executed an "Interest Assistance Agreement," which states:

> In consideration of the lender's reduction of the interest charged the borrower's account, the United States of America, acting through the Farm Service Agency of the United States Department of Agriculture (FSA) pursuant to the Consolidated Farm and Rural Development Act (7 U.S.C. Part 1921 et seq.) agrees that in accordance with and subject to the conditions and requirements in this agreement it will reimburse the lender for a maximum of 4 percentage points per annum of interest reduction. *The full amount of interest assistance payments made by FSA to the lender will be passed on to the borrower.* (Emphasis added).[2]

## PROCEDURAL HISTORY

¶ 4 Customers initially sued Bank in federal district court for the Western District of Oklahoma. In their lawsuit, *Christian v. First Capital Bank,* No. CIV–04–1272–F, Customers asserted Bank had violated a federal rule promulgated by the U.S. Agriculture Secretary, 7 C.F.R. § 762.124(a)(3) (2006) (the Regulation), which provides, in part: "Neither the interest rate on the guaranteed portion nor the unguaranteed portion may exceed the rate the lender charges its average agricultural loan customer."

¶ 5 Customers asserted Bank violated the Regulation by charging them a higher interest rate than that charged the average agriculture loan customer, and that Bank charged them excessive fees. Essentially, Customers asserted that the FSA directly paid Bank four percentage points of interest on the loan, and that Bank did not reduce the rate of interest charged them by passing along that amount. Customers asserted claims of usury, conversion, fraud in the inducement, breach of fiduciary duty, breach of third party beneficiary contract, fraud in the misappropriation of funds held in trust, deceit, reformation of contract, and unjust enrichment.

¶ 6 On January 26, 2005, the federal district court granted Bank's motion to dismiss Customers' lawsuit. The court found that the Regulation could not confer subject matter jurisdiction on a federal court; that Customers' claim for relief under the National Bank Act's 12 U.S.C. § 86 (2006) was wholly insubstantial (Bank being a state and not a federal bank); and that a private cause of action did not exist under the Agricultural Credit Act of 1987 to enforce the Act or the Regulation. The federal court declined to address Customer's "remaining state law claims," finding that it did not have federal

---

1. *See http://www.fsa.usda.gov/ok/farmLoan.htm* (last visited June 8, 2006).

2. The appellate record does not include the loan agreement between Customers and Bank, or the executed Interest Assistance Agreement. However, it does include sample forms, which we have relied on in summarizing the facts of this case. Bank does not dispute the substance of these forms.

question jurisdiction. It dismissed those claims without prejudice.

¶ 7 Customers then filed a petition in state court. They asserted the following claims: (1) *Usury*—that Bank charged them an interest rate higher than that charged the average agricultural customer, and charged them an excessive origination fee and other fees not charged the average agricultural customer; (2) *Breach of Contract*—that Customers were third-party beneficiaries of the agreement between Bank and the FSA, which Bank breached by not crediting Customers with money due under the Guaranteed Loan Program; (3) *Fraud*—that Bank failed to follow the rules of the Guaranteed Loan Program; (4) *Conversion*—that Bank kept funds belonging to Customers; and (5) *Unjust enrichment.* Customers also sought certification of a class consisting of other borrowers who had received similar FSA-guaranteed loans from Bank.

¶ 8 Bank filed a motion to dismiss, asserting no private cause of action under the Regulation was available to Customers. Bank also asserted that Customers' lawsuit was barred by res judicata and/or collateral estoppel, due to the federal district court's dismissal of their lawsuit.

¶ 9 Customers filed a response, conceding that the federal court's decision left them without a federal law-based right of action, but asserting that state law-based claims existed. Customers further asserted res judicata and collateral estoppel did not apply, because the federal court decision explicitly declined to consider their state law claims.

¶ 10 Because the parties presented matters outside the pleadings, the trial court converted Bank's motion to dismiss into a motion for summary judgment. *See, for example, Meadows v. Fain,* 1989 OK 100, ¶ 8, 776 P.2d 1270, 1271–72. Without explaining its decision, the trial court then sustained Bank's motion to dismiss. Customers appeal.

## STANDARD OF REVIEW

¶ 11 Summary judgment is used to reach a final judgment where there is no dispute as to any material fact, *Indiana Nat'l Bank v. Dep't of Human Servs.,* 1993 OK 101, ¶ 10,

857 P.2d 53, 59; and where one party is entitled to judgment as a matter of law. *Sellers v. Okla. Pub. Co.,* 1984 OK 11, ¶ 23, 687 P.2d 116, 120. We review a grant of summary judgment *de novo. Young v. Macy,* 2001 OK 4, ¶ 9, 21 P.3d 44, 47. In a *de novo* review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law. *Id.*

## ANALYSIS

### 1. *Preliminary Issue*

¶ 12 Customers argue that the trial court should have denied Bank's motion to dismiss because it was filed out of time. They base their argument on 12 O.S. Supp. 2005 § 2012(B), which states that a motion making the defense of failure to state a claim shall be made before pleading if a further pleading is permitted. Bank filed its motion several months after filing its answer.

¶ 13 We reject this argument. When a trial court converts the motion to dismiss into a motion for summary judgment, summary judgment *procedure* must be utilized. *Bray v. Thomas Energy Sys., Inc.,* 1995 OK CIV APP 146, n. 2, 909 P.2d 1191. Customers do not assert Bank violated those procedures. Thus, this argument was properly rejected by the trial court.

### 2. *Exhaustion/Res Judicata/Collateral Estoppel*

¶ 14 In response to their petition in error, Bank first asserts that Customers failed to exhaust administrative remedies. Since this argument does not appear in its motion to dismiss, we regard it as waived.

¶ 15 As to Bank's claims of bar by res judicata, we note that this doctrine provides that a final judgment by a court of competent jurisdiction upon a matter properly before it concludes the matter as to the parties to the litigation and their privies and bars a new action upon the same cause of action. *Dearing v. State ex rel. Com'rs of Land Office,* 1991 OK 6, ¶ 7, 808 P.2d 661, 664. Bank asserts res judicata applies because all of Customers' claims are based on

violation of the Regulation, and the federal court determined that Customers had no private cause of action under the Regulation. However, we reject this argument, because the federal court's order specifically states that Customers' state law claims "shall be dismissed without prejudice." Plainly, whatever the court thought about the merits of those claims, it did not enter a "final judgment" regarding those claims. Res judicata does not apply.

¶ 16 Bank also asserts Customer's claims were barred by collateral estoppel. Under this doctrine, once a court decides an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a future lawsuit. *Benham v. Plotner*, 1990 OK 64, ¶ 5, 795 P.2d 510, 512. Bank asserts the issue of whether Customers have a private cause of action under the Regulation was resolved, in the negative, by the federal court.

¶ 17 The federal court determined it did not have federal question jurisdiction to determine Customers' claims. Its analysis was based on whether it had jurisdiction under the National Bank Act or the Agricultural Credit Act of 1987. It explicitly stated it was making its decision "without even addressing the substance of the regulation." Customers' state law claims are not based on those federal laws. The jurisdictional issues resolved by the federal court are separate from whether Bank's conduct gives rise to the state-law claims, discussed below, brought by Customers. Thus, collateral estoppel also does not apply.

### 3. *Private Cause of Action Theory*

¶ 18 The thrust of Bank's motion to dismiss is that there is no private cause of action for a violation of the Regulation. We agree.

¶ 19 The mere fact that a statute grants a power to do a particular thing does not create a liability for damage caused by reason of the failure to exercise such power. 73 Am.Jur.2d *Statutes* § 311 (2001). However, the violation of a statutory provision[3] containing a mandate to do an act for the benefit of another, or a prohibition against the doing of an act which may be to his or her injury, is generally regarded as giving rise to a liability and creating a private cause of action whenever the other elements essential to a recovery are present. *Id.*

¶ 20 Regarding these "other" elements, Oklahoma has adopted a modified version of the test set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether a legislative enactment authorizes a private cause of action. *Holbert v. Echeverria*, 1987 OK 99, 744 P.2d 960. While *Holbert*'s holding has been superceded by statute (*see Walls v. American Tobacco Co.*, 2000 OK 66, 11 P.3d 626), the test is still followed. *See Nichols Hills Physical Therapy v. Guthrie*, 1995 OK CIV APP 97, 900 P.2d 1024. The test states that a cause of action can be inferred from a public-law statute only if: (1) the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) there is some indication of legislative intent, explicit or implicit, to create a private remedy; and (3) there is an implication in the statute's language that the remedy, if so found, is consistent with the underlying purpose of the legislation. *Id.* at ¶ 7, 900 P.2d at 1026.

¶ 21 Like all federal regulations, the Regulation cannot in and of itself create a cause of action; that is a function of the legislature. *Smith v. Dearbourn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir.1993). The Regulation was promulgated pursuant to authority granted the Secretary of Agriculture in 7 U.S.C. § 1989 (2006), which is part of the Consolidated Farm and Rural Development Act. On several occasions, courts have held that the Act does not expressly or impliedly give rise to a private cause of action. *See, for example, Ashbrook v. Block*, 917 F.2d 918, 926 (6th Cir.1990). This conclusion is based on an examination of the Act's legislative

---

**3.** Or, in this case, a valid administrative rule or regulation, which has the full force and effect of law. *See* 75 O.S.2001 § 308.2(c); *Chrysler Corp. v. Brown*, 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979); *Ethics Comm'n v. Keating*, 1998 OK 36, 958 P.2d 1250 (Opala, J., dissenting at n. 13).

history that reveals no indication that Congress intended to imply a private right of action. *Id.*

¶ 22 Thus, to the extent that Customers' claims are based on a violation of the Regulation, we agree with the trial court that summary judgment was appropriate. As a result, Customers cannot maintain a claims for conversion, fraud, or unjust enrichment. These last two claims are really two sides of the same coin, i.e., Bank violated the Regulation, Customers were injured, and Bank was enriched.

¶ 23 We also agree that Customers' claim for usury is barred. Customers' argument that they were charged, as 15 O.S.2001 § 266 states, more than what was "authorized by law," relies exclusively on the Regulation as "the law." There is no other evidence indicating Bank charged them a usurious rate.

### 4. *Third–Party Beneficiary Theory*

¶ 24 In addition to their reliance on the Regulation, Customers also asserted that Bank failed to do what it contracted to do in the Interest Assistance Agreement with the FSA. As quoted above, that agreement states that once Bank is reimbursed by the FSA for a maximum of four percentage points of interest reduction, "[t]he full amount of interest assistance payments made by FSA to the lender will be passed on to the borrower."

¶ 25 The issue presented is whether Customers are entitled to recover that amount as third-party beneficiaries of the agreement between Bank and the federal government. Oklahoma statutes provide that a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it. 15 O.S.2001 § 29. This rule does not require that the contract expressly give the beneficiary the power to enforce it, but only that the beneficial promise be express. *Oil Capital Racing Ass'n, Inc. v. Tulsa Speedway, Inc.,* 1981 OK CIV APP 20, ¶ 19, 628 P.2d 1176, 1179. It is not necessary that the third party be specifically named as beneficiary, but only that the contract be made expressly for the benefit of the third person. *Keel v. Titan Constr. Corp.,* 1981 OK 148, ¶ 5, 639 P.2d 1228, 1231.

¶ 26 We find that the Interest Assistance Agreement meets the requirements of a third-party beneficiary contract. It expressly requires the signatures of not only the representatives of Bank and the FSA, but also of the "Borrower," in this case, Customers. It specifies the particular loan involved, by number and amount. And it requires that the amount of interest assistance paid by the FSA "will be passed on to the borrower."

¶ 27 We note that there is at least one decision holding that farmers cannot pursue a third-party beneficiary theory when loans have been made by a bank and guaranteed by the FSA. *Ortega v. City Nat'l Bank,* 97 S.W.3d 765 (Tex.App.2003). However, we find the *Ortega* case distinguishable because the agreement consisted of general requirements on the lender and did not contain "any language that acknowledges any legal obligation owed by either the Bank or FSA to the [farmers]." *Id.* at 775. The agreement in the instant case could hardly be more specific. It requires Bank to pass on the interest assistance payments to Customers.

¶ 28 Bank also asserts that Oklahoma law does not allow for a state cause of action where no federal private right of action exists, citing *Federal Land Bank of Wichita v. Musgrove,* 1990 OK CIV APP 64, 796 P.2d 641. However, that case was mostly concerned with whether a continuance should have been granted. The Court did say it agreed with the reasoning in two Minnesota cases which held that a negligence action or breach of contract action cannot be based on a breach of mere policies of a lender or the Farm Credit Act that do not have the full force and effect of substantive law. *See, for example, Bevier v. Prod. Credit Ass'n,* 429 N.W.2d 287, 289 (Minn.Ct.App.1988). However, in the present case, Customers not only assert that Bank violated a federal Regulation, but that they breached a contract expressly for Customers' benefit.

## CONCLUSION

¶ 29 Accordingly, the trial court's grant of summary judgment is affirmed as to all of Customers' claims, except for their third-party beneficiary claim. As to that claim, the judgment is reversed and remanded for further proceedings.

¶ 30 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, V.C.J., and REIF, J., concur.